STATE OF MISSOURI, Respondent, *v.* W. W. JUDY, Appellant.

### October 28, 1879.

1. A statute prohibiting the killing or having in possession certain game within a certain period of time, is not in violation of the Constitution of this State or of the United States.

2. The statute is violated by having in possession the specified game within the prohibited period, without reference to when or where the game was killed.

APPEAL from St. Louis Court of Criminal Correction. *Affirmed.*

WILLIAM C. JONES and G. D. BAUTZ, for appellant.

J. D. JOHNSON, for respondent.

BAKEWELL, J., delivered the opinion of the court.

The appellant was convicted of having in his possession, in the city of St. Louis, on February 12, 1879, one dead quail and one dead prairie-chicken. The fact was admitted on the trial. The defence set up was that the birds were killed in the preceding December, and had been kept sweet by defendant in a refrigerator set up by him for the purpose of thus keeping game.

The act of 1877 (Sess. Acts, p. 333) provides (sect. 1) that it shall be unlawful for any person to catch, kill, or injure any prairie-chickens between February 1 and August 15, and to kill any quail between February 1 and October 15; and (sect. 3) "it shall be unlawful for any person to purchase, have in possession, or sell any of the game, birds, or animals specified in section one of this act, or any fresh pieces or parts of said animals, during the season when the catching and killing is by said section prohibited; or to purchase, have in possession, or sell any of the game, birds, or animals caught or killed contrary to the provisions of this act; and for any person to

purchase, have in possession, or sell any of the game, birds, or animals during the season prohibited by this act.''

The language of the act is so clear as to leave no room for construction. It prohibits, under a penalty, any person in Missouri having in his possession, between certain dates, certain species of game. The time when the game was killed is immaterial. The offence consists in having the game in possession in Missouri, no matter when or where it was killed. To make the question of the date at which the game was killed material, would be to change the law, which we have no power to do.

It is claimed that the law violates provisions of the Constitution of the United States and of this State. We do not think so. Defendant is not deprived of his property without due process of law. The property was acquired with knowledge of the provisions of the act. The Legislature may, in some cases, pass laws which destroy the right of property. The protection of game is a public advantage, to which private interests may be made to yield to some extent. The Constitution of the United States does not expressly prohibit the passage of game-laws by the several States, nor is there any act of Congress professing to regulate the traffic between the States in game. The State of Missouri is certainly free to pursue its own policy in the matter of protecting game, and by so doing violates no law regulating commerce between the States. *Phelps* v. *Racey*, 60 N. Y. 10; *The State* v. *Randolph*, 1 Mo. App. 15.

It is contended that the act prohibiting the citizen from possessing game which was killed in season cannot be justified by any ground of public policy for the protection of game. But, with the existing facilities for keeping and transporting meat by means of refrigerators, an act which should merely prohibit the killing of game within the breeding season would be clearly nugatory. A game-law, to be effectual, must go further, and make the mere possession of

the game during the time that it cannot be lawfully killed a penal offence. This objection was heretofore considered by this court, in *The State* v. *Randolph*, and that case is really decisive of the one at bar.

The judgment is affirmed. All the judges concur.