## COMMONWEALTH v. WM. WILKINSON.

APPEAL BY DEFENDANT FROM THE COURT OF QUARTER SESSIONS OF ALLEGHENY COUNTY.

Argued November 6, 1890—Decided January 5, 1891.
[To be reported.]

The provisions of § 9, act of June 3, 1878, P. L. 161, amended by act of April 25, 1889, P. L. 53, which forbid any person to "kill or expose for sale, or have in his or her possession, after the same has been killed, any quail," between certain dates in each year, under a penalty of $10 for each bird so killed, exposed for sale, etc., do not prohibit the selling or having in possession, during said period, of quail killed in and imported from another state.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 217 October Term 1890, Sup. Ct.; court below, No. 205 March Term, 1890, Q. S.

On March 10, 1890, the grand jury returned as a true bill an indictment of William Wilkinson and Sarah Wilkinson, charging in the first count that the defendants on January 8, 1890, did kill and expose for sale "twenty quail and Virginia partridge," and charging in the second count that the defendants on the same day did have in their possession, after the

same had been killed, "twenty quail and Virginia partridge," etc. The defendants pleaded not guilty.

At the trial on May 20, 1890, the jury returned the following special verdict:

We find the defendant, Sarah Wilkinson, not guilty. We find the defendant, William Wilkinson, guilty of having in his possession for sale, and exposing for sale, in the city of Pittsburgh, on January 8, 1890, twenty quail, as charged in the indictment. But we further find that said quail were not killed in the state of Pennsylvania, but were ordered by telegraph, by the defendant, from a firm in St. Louis, Mo., where it was at the time lawful to kill and sell said quail; that said quail were so ordered on December 28, 1889, and were delivered by the Adams Express Company and paid for December 30, 1889, by defendant.

If, on this state of facts, the court be of the opinion that the defendant is guilty of the offence charged, under the acts of assembly of the state of Pennsylvania, then judgment to be entered on the verdict against the defendant; if the court be of the contrary opinion, then judgment on the verdict to be arrested.

After argument of the question reserved, the court, EWING, P. J., entered judgment on the verdict, filing the following opinion:

According to the special finding of the jury, the defendant had in his possession and offered for sale, in the city of Pittsburgh, on January 8, 1890, twenty quail, and these quail had been purchased in St. Louis, Mo., on December 28, 1889, where, presumably, the law permitted the killing and sale of the game at that time. They were forwarded to the defendant at Pittsburgh, and were his property at the time. No question of inter-state commerce arises in this case. The defendant was offering for sale his own property.

The ninth section of the act of assembly of June 3, 1878, declares that "No person shall kill or expose for sale, or have in his or her possession after the same has been killed, any quail . . . . . between the first day of January and the fifteenth day of October, in any year, under a penalty of ten dollars for each bird so killed, exposed for sale or had in possession." By

Opinion of Court below.

the supplement of May 23, 1887, the prohibited time is made to run from the fifteenth day of December to the fifteenth day of October, next following.

This provision, imposing a penalty for having in possession or exposing for sale game which has been lawfully killed, goes to the extreme verge of the police power of the state, but it seems to have been sustained in numerous instances by the highest courts of some of the states, and we will assume that it is a constitutional provision. The learned counsel for defendant does not impeach the constitutionality of the act, but contends that it does not cover the acts of defendant in this case; that the provision of the thirty-third section of the act, that in all cases of "the violation of each or any of the foregoing sections of this act, the possession of the game . . . . . or birds, . . . . . provided for or so mentioned, shall be prima facie evidence of the violation of said act," shows that it was not intended to make the possession of the game during the prohibited period an offence.

There are exceptions in the act. The thirty-second section gives fifteen days for the disposition of the game, after the time limited within which it is lawful to kill it. Within that fifteen days, possession or offering for sale would be but prima facie evidence of guilt. The sixteenth, twenty-eighth and twenty-ninth sections also make exceptions to the general provisions of the act, and proof that the defendant came under any of these exceptions would shield him from the penalty imposed by the act. But the defendant has not brought himself within any of these exceptions. This being the case, we see no logical escape from the conclusion that the legislature intended to and has made it a penal offence to have the game in possession and expose it for sale, under the circumstances which have been found by the jury.

And the fact that he purchased it in another state and offered it for sale in this state, raises no exception to the broad terms of the act of assembly. The statute of the state of New York is identical with ours, and in Phelps v. Racey, 60 N. Y. 10* (19 Am. Rep. 140), it was held that the place where the game

* This case was cited, in the opinion, as printed in the paper-book, thus: " Phillips v. Ray, 60 N. Y," without a reference to the page. Please do not hold the Reporter responsible for such misfits, whenever they are

was killed was of no importance.  Wagner v. People, 97 Ill. 333, holds to the same doctrine, as also State v. Randolph, 1 Mo. App. 15.

Defendant's counsel cites Commonwealth v. Hall, 128 Mass. 410; but in that case the statute differed from our own, and the court recognized and approved the ruling of the New York court in the above case.  In the former case in our own court, decided by Judge Bailey, Commonwealth v. Voight, these rulings of other courts seem to have been overlooked.  We must decide the law as we find it, not as we would have it.

Judgment will be entered on this verdict on motion of the district attorney.

—The defendant, William Wilkinson, was thereupon sentenced to pay a fine of $200, or in default thereof undergo imprisonment in the county jail for 200 days.  He then obtained an allocatur and took this appeal, specifying, inter alia, that the court erred:

3. In deciding that the facts found by the jury constituted no defence to the prosecution.

4. In directing judgment to be entered on the verdict.

*Mr. Clarence Burleigh* (with him *Mr. A. D. Wilkin*), for the appellant:

1. Our contention is that the quail, etc., referred to in the acts of June 3, 1878, P. L. 161, and April 25, 1889, P. L. 53, the exposing for sale or having in possession of which is made an offence, must be construed to be game killed within the state of Pennsylvania; and, to convict the appellant under this indictment it was necessary to prove that the twenty quail in his possession on January 8, 1890, had been killed in violation of the statute, i. e., killed within the state: Commonwealth v. Hall, 128 Mass. 410; Davis v. McNair, 21 Cent. L. J. 480; Allen v. Young, 76 Me. 80; People v. O'Neil, 71 Mich. 325; Simpson v. Unwin, 3 B. & Ad. *134.  In no less than fourteen places, the operation of the act of 1878 is limited to this state and game killed therein: §§ 1, 12, 15, 16, 22, 23, 24, 25, 26,

found in his Reports.  So far as is in his power, he has all the citations verified and corrected before the copy goes to the printer, but he does not have access to all the Reports, English and American, to which references are made.

## Arguments.

40. To say that because the words "in this state," or their equivalent, do not happen to be plainly printed in cold type in § 9, it must be construed liberally and made to embrace all game, wherever or however killed or received, is a novel way of construing a penal statute.

2. When game is taken and subjected to man's control, he acquires a property therein which the law will protect: 2 Kent. Com., *348; Goff v. Kilts, 15 Wend. 551; Taber v. Jenry, 1 Sprague 215; Amory v. Flyn, 10 Johns. 102. If it is lawful to kill the quail, how can it be unlawful to have those identical quail in one's possession? The provision in § 33 of the act of 1878, that the possession of the game, fishes, birds, etc., mentioned, "shall be prima facie evidence of the violation of said act," assumes and recognizes that a person may lawfully receive, possess, expose for sale, and even kill quail, etc., out of season, notwithstanding § 9. Therefore, by the terms of the act, there can be a defence, even if a person does kill, or expose for sale, or have in his possession quail between December 15th and the first day of November next following; and what more competent or logical defence than that the game was killed and sold in another state, where its killing and sale were lawful?

3. It is not correct to say that § 33 refers to the exceptions specified in the act, and that one not bringing himself within those exceptions cannot invoke that section; for, a person who can bring himself within one of those exceptions does not need to invoke the aid of § 33. The act itself provides for him an independent defence, and declares him not guilty at all; provides a defence that would absolutely protect him if § 33 had never been enacted. We suggest, also, that to construe the act in accordance with the commonwealth's claim, would be to impinge upon the inter-state commerce laws, in effect prohibiting the importation of game during the time specified, thus violating § 8, article I. of the constitution of the United States: Bowman v. Railroad Co., 125 U. S. 465; Leisy v. Hardin, 135 U. S. 108; Lyng v. Michigan, 135 U. S. 166; Robbins v. Taxing District, 120 U. S. 489; State v. Saunders, 19 Kas. 127 (27 Am. Rep. 98). It is beyond the power of the legislature to prohibit the importation from other states of any legitimate article of commerce, or even to impose burdens or restrictions thereon.

Arguments.

*Mr. Thomas Herriott* (with him *Mr. R. H. Johnson*, District Attorney), for the Commonwealth:

No question of inter-state commerce can arise in this case. The defendant, a citizen of Pennsylvania, was retailing the quail as his own property, and it is not pretended that he was selling in original packages. The only question to be decided is the meaning of § 9, act of June 3, 1878, P. L. 161, as amended by act of April 25, 1889, P. L. 53.

1. The words of the statute are simple, clear and unambiguous, and there can be no doubt as to their meaning. The argument that, because in fourteen places the operations of the act are limited to this state, therefore § 9 should be limited to quail killed within the state, is clearly fallacious. Nor is the position that § 33 would be insensible unless the act were held to apply only to game killed within the state, borne out by a careful reading of it. In various sections exceptions are made of game, etc., killed for certain purposes or in certain places. It is to these cases that § 33 applies, rendering possession prima facie evidence of guilt, but allowing the defendant to overcome this prima facie case by evidence bringing him within one or other of the exceptions.

2. The argument that one has a qualified property in dead game, overlooks the fact that at common law in Great Britain the game belonged to the King: 4 Bl. Com., 410, 415; and with us the ownership is in the people of the state, individuals having no rights except such as are expressly given by statute: Wagner v. People, 97 Ill. 333; Tiedeman, Police Power, 440; and, if the state thinks it necessary, in order to protect its own game, to prevent the sale of game at certain seasons, it takes away no vested right from any citizen. Such a regulation, on the contrary, is clearly within the police powers of the state, which may give or withhold such privileges in regard to game as may seem proper, and is constitutional. The Supreme Court of Illinois have so held in a decision made June 5, 1890, not yet reported except in 31 Cent. L. J. 271.

3. Any other construction than that contended for by the commonwealth would afford the greatest facility to persons desiring to evade the law. It would be easy to send game, killed in this state, into another state, and then ship it back and sell it, under pretence of its having been killed without the state.

Opinion of the Court.

The decision of the court below is sustained by Whitehead v. Smithers, L. R. 2 C. P. Div. 553; State v. Randolph, 1 Mo. App. 15; State v. Judy, 7 Mo. App. 524; Wagner v. People, 97 Ill. 333; Phelps v. Racey, 60 N. Y. 10 (19 Am. Rep. 140).

4. The case relied on by the defendant, Commonwealth v. Hall, 128 Mass. 410, is not in conflict with those we have cited, for the Massachusetts statute expressly confines the penalty to birds killed in that state, and Mr. Justice GRAY, in the opinion, distinguishes the case from Phelps v. Racey, supra, on that ground. In regard to the constitutionality of such legislation, we cite: Tiedeman, Police Power, § 122; State v. Beal, 75 Me. 289; Burnham v. Webster, 5 Mass. 266; Nickerson v. Brackett, 10 Mass. 212; Gentile v. State, 29 Ind. 409; Phelps v. Racey, 60 N. Y. 10 (19 Am. Rep. 140); State v. Norton, 45 Vt. 258; State v. Judy, 7 Mo. App. 524; Wagner v. People, 97 Ill. 333; Allen v. Wyckoff, 48 N. J. L. 93 (57 Am. Rep. 548).

OPINION, MR. CHIEF JUSTICE PAXSON:

The defendant was convicted in the court below of a violation of the game laws. The jury found specially that he had in his possession for sale, and exposed for sale, in the city of Pittsburgh, on January 8, 1890, twenty quail; but they also found "that said quail were not killed in the state of Pennsylvania, but were ordered by telegraph, by the defendant, from a firm in St. Louis, Mo., where it was at the time lawful to kill and sell said quail; that said quail were so ordered on December 28, 1889, and were delivered by the Adams Express Company and paid for December 30, 1889, by defendant." Upon this state of facts, the court below entered judgment for the commonwealth upon the verdict, and sentenced the defendant to pay a fine of $200 to the commonwealth, or, in default thereof, to undergo an imprisonment for 200 days.

This proceeding was founded upon the ninth section of the act of June 3, 1878, P. L. 161, which, as amended by § 1, act of April 25, 1889, P. L. 53, enacts that "No person shall kill or expose for sale, or have in his or her possession after the same has been killed, any quail or Virginia partridge, between the fifteenth day of December in any year and the first day of November next following, under a penalty of ten dollars for each

bird so killed, exposed for sale, or had in possession." By the thirty-third section of said act it is provided : " In all cases of arrests made for the violation of each or any of the foregoing sections of this act, the possession of the game, fishes, birds, animals, fowls, nets, or other devices provided for or so mentioned, shall be prima facie evidence of the violation of said act."

The manifest object of this act was the preservation of game within this commonwealth. We cannot assume that it was intended ·to preserve game elsewhere, and it would be a forced construction to hold that it was intended to exclude from our markets quail and other game killed in other states, where by the laws of those states the killing of them was lawful. A careful reading of the language of the act shows that it applies only to game killed in this state out of season. " No person shall kill . . . . . any quail." This means that no person shall kill quail within this commonwealth, except during the period allowed by law. The law was not intended to have any extra-territorial effect, and, if it was, it would be nugatory. After prohibiting the killing of quail, the act further declares : " Or have in his or her possession after the same has been killed," etc. What does the word " same " here refer to ? Clearly the antecedent game, the killing of which had already been prohibited. The meaning of the act, as we view it, is that no quail shall be killed, in this state, between the dates specified, and no person shall have in his possession or offer for sale any quail so killed in this state. The construction claimed for the act, by the commonwealth, would render any one a criminal who lawfully killed quail in another state, and brought them here for his own use. It would be prima facie evidence of a violation of the act, and if he could not show as a defence that he killed them outside the commonwealth, he would have no defence at all.

The matter is too plain to require elaboration.

The judgment is reversed, and judgment entered for the defendant below, non obstante veredicto.