[Argued June 20, 1893; decided July 10, 1893.]

## STATE *v.* McGUIRE.

### STATE *v.* BARNES.   STATE *v.* COVACH.

[S. C. 33 Pac. Rep. 666 ; 21 L. R. A. 478.]

GAME AND FISH LAWS— CLOSE SEASONS.— It is not a violation of the game or fish laws of Oregon ( Laws 1891, p. 33, as amended by laws 1893, p. 145 ) to have in one's possession during a close season, fish caught out of the state, or caught in the state during an open season.[*]

Multnomah County: MICHAEL G. MUNLEY, Judge.

[*] NOTE.— The right of a person to take fish from his own artificial pond during the close season is denied in the late case of *Com.* v. *Gilbert* ( Mass.) 22 L. R. A. 439, holding that the legislature may make penal the possession of a fish which is not alive during the close season, even as to one by whom the fish was artificially propagated. Quite similar was the decision in the Illinois case of *People* v. *Bridges*, 16 L. R. A. 684, in 1892, holding that even as to a lake wholly upon lands of a private owner, and connected with an unnavigable stream only in time of high water, it was not unconstitutional to prohibit fishing with a seine during part of the year.

This is somewhat akin to the decision in *State* v. *Lewis*, ( Ind.) 20 L. R. A. 52, to the effect that the possession of nets, which are not for use in waters where their use is permitted by statute, may be made a criminal

These are cases against Wm. M. McGuire, F. C. Barnes, and G. Covach for violating the law regarding the having, or offering for sale, of fish during the close season on the Columbia River, and were tried as test cases. Defendants were convicted, and appeal. Reversed.

*Cyrus A. Dolph* (*Rufus Mallory*, and *Jos. Simon* on the brief), for Appellants.

*Geo. E. Chamberlain*, attorney-general, and *Wilson T. Hume*, district attorney, for the State.

MR. CHIEF JUSTICE LORD delivered the opinion of the court:

These are criminal actions brought by the state game warden in the justice's court for the South Portland Precinct, wherein the defendants, after trial, were severally convicted and fined. Thereafter each of the defendants prosecuted his appeal to the circuit court, where the cases were tried anew with like results, and from the judgments therein rendered the defendants have appealed to this court. The questions involved in each case being substantially the same, they were, as a matter of convenience, tried together in the circuit court, and the same course has been adopted in the argument here.

In *State* v. *Wm. McGuire*, the complaint charges that the defendant, "On the sixth day of March, A. D. 1893, in the county of Multnomah, and state of Oregon, did wil-

offense. And in the very late decision by the supreme court of the United States in *Lawton* v. *Steel*, 152 U. S. 133, affirming 7 L. R. A. 134; 119 N. Y. 226 (16 Am. St. Rep. 813), it is held constitutional to authorize the summary destruction of nets used for illegal fishing. From this decision Chief Justice FULLER and Justices FIELD and BREWER dissented on the ground that this was a deprivation of property without due process of law.

For power to regulate fisheries generally, see *Lawton* v. *Steele*, 7 L. R. A. 134 (119 N. Y. 226; 16 Am. St. Rep. 813), and notes; *Com.* v. *Manchester* 9 L. R. A. 336, 152 Mass. 230 (23 Am. St. Rep. 820); *State* v. *Harrub*, 15 L. R. A. 761 (95 Ala. 176; 36 Am. St. Rep. 195). For unconstitutionality of statute prohibiting the export of fish from a state, see *Territory* v. *Evans*, (Idaho) 7 L. R. A. 288.— REPORTER.

fully and unlawfully have in his possession, then and there being the close season on the Columbia River, certain fish, to wit, steelhead salmon, caught in the said Columbia River contrary to the statutes in such cases provided," etc. At the trial it appeared from the testimony for the state that the defendant, at the time stated, which was shown to be the close season on the Columbia River, had in his possession a quantity of steelhead salmon, belonging to the fish dealers in Portland, and which had been caught in the Columbia River. The testimony for the defendant showed that he was the manager of a cold-storage ware house, and that he held the fish in question as custodian for his patrons; and he offered to show, against the objection of the state, that the fish had been caught in the open season on the Columbia River, and that the same belonged to the fish dealers in the city, who had stored them with him, and with whom he had agreed to preserve them in cold-storage, and deliver the same upon demand. The trial court sustained the objection to the introduction of this testimony upon the ground that the same was immaterial and incompetent, to which ruling the defendant excepted.

In *State* v. *F. C. Barnes* the complaint is the same, except that it charges that the defendant did "wilfully and unlawfully have in his possession and offer for sale," etc. The testimony for the state showed that at the time mentioned in the complaint, which was the close season on the Columbia River, the defendant was the proprietor of a fish market in the city of Portland, and had exposed for sale steelhead salmon which had been caught in the Columbia River. The defendant offered to show that such fish had been caught in the open season on said river, and had been preserved in cold storage from that time until they were offered for sale. This evidence was excluded on the same ground and an exception reserved.

In *State* v. *Covach* the complaint is the same as *State*

v. *Barnes,* aforesaid.  The testimony for the prosecution
showed that the defendant was the proprietor of a fish
market, and at the time stated, which was shown to be the
close season on the Columbia River, had in his possession,
and exposed for sale, steelhead salmon which had been
caught in the Umpqua River.  The defendant offered to
prove that the fish were caught during the open season on
the river, etc., but the evidence was excluded, and an
exception saved.

The instruction of the court to the jury, to which an
exception was reserved, is the same in each case, and is as
follows:  "If you find beyond a reasonable doubt that the
defendants, or either of them, had steelhead salmon, chi-
nook salmon, silver salmon, or blueback, in their posses-
sion, or offered the same for sale, during the close season
on the Columbia River, no matter where the same were
caught or taken, or when they were caught or taken,
then you must find the defendants guilty."  The com-
plaints are based on the act of 1891, entitled "An act to
protect salmon in the state of Oregon," etc., and the act of
1893, amendatory thereof.  Section 1 of the act of 1891
provides that "It shall not be lawful to take or fish for
salmon in the Columbia River or its tributaries, by any
means whatever, in any year hereafter between the first
day of March and the tenth day of April, or between the
tenth day of August and the tenth day of September, in
any of the rivers and bays of the state, or the Columbia
River, during the weekly close time,—that is to say, between
the hours of six o'clock P. M. on each and every Saturday
and six o'clock in the afternoon of the following Sun-
day": (Session Laws, 1891, p. 33).  By the amendatory
act of 1893, sections 3 and 6 of the act of 1891 are
amended so as to read as follows:  "Section 3.  It shall
not be lawful for any person or persons to take or fish for
salmon in the waters of the Nehalem, Tillamook, Nes-
tucca, Salmon, Siletz, Yaquina, Alsea, Siuslaw, Umpqua,

XXIV. OR.— 24.

Coos Bay, Coquille, Sixes, Elk, Chetco, Rogue River, Windchuck, or any of their tributaries, or in any other streams or bays in this state except the Columbia River and its tributaries, from the first day of November until the fifteenth day of December, or between the fifteenth day of April and the first day of June. Section 6. It shall be unlawful for any person or persons to receive or have in possession, or offer for sale or transportation, or to transport, during the close seasons named in this act, any of the following varieties or kinds of fish, which may be caught in any of these streams as aforesaid, viz.: chinook salmon, silver salmon, steelhead or blueback, and any person or persons violating any of the above sections shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in a sum of not less than ten dollars nor more than two hundred and fifty dollars": Session Laws, 1893, p. 145.

The object of these actions is to obtain a construction of the act of the legislature of 1891 as amended by the act of 1893. Under the statutes there are several close seasons, but none of them are of general application throughout the state, except the weekly close season. There are times during the year when it is an open season on the Nehalem, Tillamook, etc., and lawful to catch fish in their waters, and it is a close season on the Columbia, and unlawful to catch fish in its waters. The particular question to be determined is, Does the statute prohibit a person from having in his possession, or offering for sale, during the close seasons named in the act, any fish of the varieties mentioned, which were caught in any of the rivers enumerated during their open seasons? The construction which the trial court gave to the statute by its rulings on the evidence, and its instruction to the jury, was that it is unlawful for a person to have in his possession, or offer for sale, during the close season on the Columbia, fish of the kind named in the act, "no matter where they were caught

or taken, or when they were caught or taken." In this view it was no defense that such fish were caught in the Umpqua or Columbia Rivers during the open seasons specified in the statute, when it was lawful to catch them, if the defendants had such fish in their possession, or offered them for sale, during the close season on the Columbia. Hence, as in the cases of the defendants McGuire and Barnes, fish caught during the open season on the Columbia, when it is lawful to catch them, and placed in cold-storage for their preservation, or, as to that matter, put up in salt or cans, cannot lawfully remain in the possession of the owner, or be offered for sale, during the close season on that river, or, as in the case of the defendant Covach, it would be unlawful for a party to have in his possession, or offer for sale, fish caught during the open season on the Umpqua, when it is lawful to catch them, if it happens to be the close season on the Columbia. Under this construction of the statute, a party who has in his possession such fish, or who offers them for sale, although lawfully caught, whether in or out of the state, and his private property, is liable to punishment, and his property rendered worthless or destroyed. Nor is this all. Salmon caught on Friday night or Saturday morning, which may come into the cannery or market at six o'clock Saturday evening,—the commencement of the close season each week,—must be immediately destroyed, or the party having them in his possession, or offering the same for sale, during such weekly close season, will be exposed to prosecution and punishment. A statute which leads to such consequences ought not only to be clear, but mandatory, and the act done under it not only within the letter, but within the spirit, of the law, to authorize its enforcement.

This construction, however, counsel for the state insist must be given to the statute, to make it effective, and carry out the purpose of the law. Their contention is that the object of the statute is to protect such fish during the

close season in order that they may have an opportunity to propagate their species, and be preserved from extermination, and that if any other construction is adopted, fish could be caught in the open season in such numbers as to supply the market during the close season by putting them in cold-storage until wanted, and by so doing the stock of fish would be seriously impaired, or exhausted, and but a few or none would be left to propagate their kind, and, finally, that such a construction is necessary to prevent evasion of the statute, and make the proof of its violation easy and accessible. Hence they argue that the fact of the fish being caught in a lawful season constitutes no defense, so that the time and place when and where such fish were caught are not material. In support of this view they assert that the same principle governs as in those cases where game has been lawfully killed in one state, and exposed for sale in another, during the prohibited season in the latter state. This principle perhaps finds its best illustration in *Phelps* v. *Racey*, 60 N. Y. 10, where a statute declared that no person should expose for sale, or kill, or have in his possession after it had been killed, any quail or other game, between the first day of January and the twentieth day of October. The defendant was indicted for having quail in his possession in March. He had invented an apparatus to preserve game, and that which he had in his possession, and specified in the complaint, was killed in New York in the open season, or received from Minnesota or Illinois, where the killing at the time was legal, and put up by him in his apparatus in the month of December. CHURCH, C. J., said: "The language of these sections is plain and unambiguous; hence there is no room for construction. It is a familiar rule that when the language is clear, courts have no discretion but to adopt the meaning which it imports. The mandate is, that 'any person having in his or her possession,' between certain dates, certain specified game killed, shall be liable to a

penalty.  The time when, or the place where, the game was killed, or when brought within the state, or where from, is not made material by the statute, and we have no power to make it so.  *  *  *  That it was either killed within the lawful period, or brought from another state where the killing was lawful, constitutes no defense.  The penalty is denounced against the selling or possession after that time, irrespective of the time or place of killing."

In *Magner* v. *People*, 97 Ill. 320, among other things, SCHOLFIELD, J., says:  "We think it is obvious that the prohibition of all possession and sales of such wild fowls or birds during the prohibited seasons would tend to their protection, in excluding the opportunity for the evasion of such law by clandestinely taking them, when secretly killed or captured here, beyond the state, and afterwards bringing them into the state for sale, or by other subterfuges and evasions.  It is quite true that the mere act of allowing a quail netted in Kansas to be sold here does not injure, or in anywise affect, the game here; but a law which renders all sales and all possession unlawful will more certainly prevent any possession or any sale of the game within state than will a law allowing possession or sales here of the game taken in other states.  This is but one among many instances to be found in the law where acts which in and of themselves alone are harmless enough, are condemned because of the facility they otherwise offer for a cover or disguise for the doing of that which is harmful."  See also *State* v. *Randolph*, 1 Mo. App. 15; *Game Association* v. *Durham*, 51 N. Y. Sup. Ct. 306; *Whitehead* v. *Smithers*, 21 Moak's Eng. Rep. 458.

It is also held that such statutes are not in conflict with the constitutional provision that no person shall be deprived of his property without due process of law, and are not regarded as an interference with interstate commerce: *Phelps* v. *Racey*, 60 N. Y. 10; *State* v. *Randolph*, 1 Mo. App. 15.  But there are other decisions, later in

point of time, holding a contrary doctrine, which cannot be wholly reconciled by the difference in the language of the statutes. In *People* v. *O'Neil*, 71 Mich. 325 (39 N. W. 1), it was held that the possession of game killed in another state is not an offense under the Michigan act of 1881, which makes it an offense to have game in possession for the purpose of sale, during a certain period of the year, since the purpose of the act as shown by the title is the protection of game within the state. CHAMPLIN, J., after reviewing the authorities already referred to, said: "A construction of a statute which leads to such harsh consequences, and punishes with severe penalties acts which are confessedly innocent in themselves, must not only be unambiguous, but mandatory; and the act done must not only be within the letter, but within the spirit, of the law to gain my assent to its enforcement. Our statute requires no such strict construction. The articles interdicted are articles of food, and the interdiction is not because such food is unwholesome, and therefore detrimental to health, but the whole end and object of the legislation is to protect and preserve the game of Michigan. * * * The various provisions of the act are all directed to that purpose. And how it can be held that this law is violated, either in letter or spirit, by importing game from other states to supply food to citizens of this state, is a point I am unable to understand. The only ground upon which such construction is attempted to be defended is that it prevents evasion of the statute; that game might be killed in this state in violation of law, and shipped to another state, and there re-shipped into this state, and the prosecution might be unable to prove that it was Michigan game, killed in violation of law. That may disclose a defect of proof; but I submit it does not apply to cases where the fact is conceded or proved to the satisfaction of the jury that the game was not killed, in the violation of law." In the same case, CAMPBELL, J., said: "Concurring as I do,

in the meaning of our statute as explained by my brother CHAMPLIN, I do so for the further additional reason that I do not think it would be competent for our legislature to punish the possession of game which was lawfully captured or killed. Having become lawful private property, it cannot be destroyed or confiscated, unless it becomes unfit for use, any more than other property can be destroyed. I do not think the cases to the contrary are reasonable or sound. While in England the power of parliament cannot, perhaps, be questioned by courts, there is no such rule here, and I cannot see on what principles such decisions are maintainable. It is not competent for any American statute to raise conclusive presumptions of guilt in any case. This is well settled. When the possession is traced back of the time when it became unlawful to take game, the presumption has no further force as evidence, and what was then lawful cannot be made a crime by lapse of time only."

In *Commonwealth* v. *Wilkinson*, 139 Pa. St. 304 (21 Atl. 14), in construing an act which provides that "No person shall kill, or expose for sale, or have in his possession after the same has been killed, any quail between the fifteenth day of December, in any year, and the first day of November following," PAXON, C. J. said: "The manifest object of this act was the preservation of game within this commonwealth. We cannot assume that it was intended to preserve game elsewhere, and it would be a forced construction to hold that it was intended to exclude from our markets quail and other game killed in other states, where by the laws of those states the killing of them was lawful. * * * The law was not intended to have any extra territorial effect, and, if it was, it would be nugatory. * * * The construction claimed for the act by the commonwealth would render any one a criminal who lawfully killed quail in another state, and brought them here for his own use. It would be *prima facie* evidence of a

violation of the act, and if he could not show as a defense that he killed them outside the commonwealth, he would have no defense at all. The matter is too plain to require elaboration." In *Allen* v. *Young,* 76 Me. 80, it was held that where a statute made it an offense to kill deer at a certain time, or to transport them from place to place during that time, it was not an offense to transport from place to place during the prohibited season deer killed before. See, also, *Commonwealth* v. *Hall,* 128 Mass. 410; *Davis* v. *McNair,* 7 Crim. Law Mag. 219; 21 Central Law Jour. 480.

In these cases the courts held that the object of the act was to protect game in the state, as indicated by the title, and that the statute sought to attain this object by punishing the taking or killing of such game in the state during the prohibited seasons, or the offering for sale, or having in possession, in the state, during such times, of game so taken or killed. So that if the killing or taking of game in the state was at a time when it was lawful, under the statute, to do so, the offering for sale, or having in possession, of game so taken or killed, was not an offense against the statute. If our statute will bear this construction, then it was only intended to prevent the taking or catching of the salmon specified, on the rivers enumerated, within the state, during their close seasons, and to render unlawful, or make a misdemeanor, the offering for sale, or having possession of, salmon so taken or caught, on such rivers in this state, during such close seasons. In this view, the offering for sale, or having possession of, salmon during the close seasons, which had been lawfully taken or caught, is not an offense. The trial court, however, construed the act differently, holding, as indicated by its instruction, that the offering for sale, or having possession of, the fish mentioned in the complaint, during the close seasons named in the act, was a misdemeanor "no matter where the same were caught or taken, or when they were caught or taken." So, also, the ruling of the court that

the proof offered by the defendants, viz: that the fish in question were caught during a lawful season, was immaterial, was based on the theory that the time when, and place where, the fish were caught, was not made material by the statute, and, therefore, constituted no defense. The effect of this construction is to declare that, in order to protect the salmon in this state, it was the intention of the statute to punish the offering for sale, or the having in possession, of salmon of the varieties specified, during the prohibited seasons, no matter whether they were lawfully caught within or without the state; in a word, that it was the intention of the legislature to punish the mere possession of salmon which had been lawfully caught or taken. It ought to require plain, unambiguous, and mandatory language to justify any court in declaring fish or game lawfully caught or taken to be the subject of an offense, by the simple possession of it. A construction leading to such injustice ought to be avoided, if it can be reasonably done.

Salmon fish is an article of food, and the law interdicting the catching of them at certain seasons is not because they are unfit for use, or unwholesome, but to protect and preserve such fish in this state. The constitution requires the object of every act to be expressed in its title. The object of the act, as expressed by the title, is to protect salmon in the state of Oregon. All its provisions are directed to this purpose. None of them would be violated by bringing fish which had been lawfully caught in other states into this state. Is it violated by offering for sale or having in possession fish during the prohibited seasons which had been caught in the open seasons on the river, when it was lawful to do so? Certainly, if the legislature intended to declare the mere possession of such fish during the close season an offense, no matter where or how lawfully caught or taken, words could easily have been found to express such intention. The section on which the

indictment is found reads: "It shall be unlawful for any person or persons to receive, or have in possession, or offer for sale, etc., during the close seasons named in the act, any of the following varieties or kinds of fish, which may be caught in any of these streams as aforesaid, viz.: chinook salmon," etc. A violation of this section involves the catching of such fish in the streams enumerated in the act, and contrary to the provisions of such act. "Which may be caught in any of these streams as aforesaid," is the language of the section. The words "as aforesaid" do not relate to the streams themselves, but to the time or manner of taking fish from them. "As" qualifies "caught," making the sentence read, by the transposition, "caught as aforesaid in any of these streams," and means fish caught during the close seasons aforesaid in any of these streams. This is in accordance with the grammatical relation of the words. On the other hand, if these words relate to the "streams," and the construction of the act is as claimed by the prosecution, then a party having in possession, or offering for sale, during the close season upon the Columbia River, fish of the variety described in the complaint, no matter what their condition, where or how lawfully they were caught, is guilty of a crime. In the case before us, when the fish were caught in the rivers of this state, according to the conceded facts, it was lawful to do so, and when so caught and reduced to possession of the party, they became his property, and he could deal with them in the same way as with any other personal property. Having become his lawful private property, must he subsequently, when such fish are wholesome, and not detrimental to the public health, destroy them, or be exposed to punishment for having the same in his possession? To subject a party to such an alternative involves an absurdity and injustice that we are bound to avoid, if the act is susceptible of another construction.

The rule is well established that "where the language

of the legislature is fairly susceptible of two different mean-
ings, that should be preferred which excludes and pre-
vents consequences that are mischievous and unjust": In
Code's case, 3 Ont. App. 550, Lord Justice BRAMWELL said:
"When a particular construction of an act of parliament,
or a particular proposition of law, leads to hardship, there
is a presumption against that construction or proposition
being right, because I do not think our law does, usually
at least, lead to hardship": *In re Hooper*, 11 Ch. Div. 322.
So that, if the language of the statute was susceptible of
two constructions, it would be our duty to adopt that con-
struction which would avoid unjust consequences. But we
do not think such is the case here. Looking at section 6
as amended, it would seem that it was to avoid the con-
struction contended for by the prosecution that the legis-
lature modified the otherwise absolute provision of section
6 by the use of the words, "which may be caught in any
of these streams as aforesaid." The statute, as it stands,
was only intended to prevent the catching of the varieties
of fish specified during the protected seasons on the rivers
enumerated in the statute, and to render unlawful the
offering for sale, or having possession of, such fish so
caught in the state during the close seasons. The indict-
ment is drafted upon this construction of the statute. The
defendants are charged by it with having in their posses-
sion or offering for sale during the close season certain
fish, viz: steelhead salmon, caught in the Columbia River
contrary to the statute. Steelhead salmon are caught in the
Columbia River contrary to statute only during the close
seasons on that river. It is not in contravention of the
statute to catch such fish during the open seasons on the
Columbia or other rivers enumerated. No offense, there-
fore, according to the admitted facts, was committed when
the fish were in fact caught, and consequently the defend-
ants did not have in their possession or offer for sale, fish
caught contrary to the statute. In view of these considera-

tions, we think before a conviction can be had under the statute, it must appear that the defendants had in their possession, or offered for sale, during the close seasons mentioned therein, the kinds of fish specified, which had been caught during the close season from the streams in such statute enumerated. It results that the judgment of conviction in each of the above entitled cases must be reversed and a new trial ordered. REVERSED.