Argued 11 October; decided 23 October, 1899.

## STATE v. SCHUMAN.

[58 Pac. 661, 47 L. R. A. 153.]

1. FISH*—UNLAWFUL SALE—STATUTES.—Laws, 1899, p. 199, § 5, providing that it shall be unlawful to sell, offer for sale, or have in possession for sale, any species of trout, at any time, applies with as much force to trout lawfully caught in another state and shipped into this state, and becoming a part of its general property, as to those caught within its limits: *State* v. *McGuire*, 24 Or. 366, distinguished.

2. APPEAL—QUESTIONS NOT RAISED BELOW.—Subject to the statutory exceptions it is a well settled rule that questions not presented to the trial court will not be considered on appeal: *State* v. *Tamler*, 19 Or. 258, cited.

3. FEDERAL QUESTION—TIME FOR PRESENTING.—A claim of a right, privilege, or immunity claimed under the Constitution of the United States must be asserted and denied in the trial court before it can be considered on appeal. See *Allen* v. *City of Portland*, 35 Or. 420, 422.

4. DUE PROCESS OF LAW—STATUTORY CONSTRUCTION.—Laws, 1899, p. 199, § 5, providing that it shall be unlawful to sell, offer for sale, or have in possession for sale, any species of trout, at any time, is not a violation of the Fourteenth Amendment of the Constitution of the United States, as depriving of his property without due process of law one who has imported into the state trout which have become part of the general wealth; since the statute does not deprive such person of his title, but limits the rights appurtenant thereto, and, having imported such fish with knowledge of the law, he must suffer the penalties which it prescribes.

5. SUBJECTS OF POLICE POWER.—The sale of a commodity may be subject to the exercise of the police power, though its use would not necessarily subvert the morals, impair the health, or disturb the peace of society.

## From Multnomah : MELVIN C. GEORGE, Judge.

*NOTE.—There is a short monograph on Game Laws with the report of *Ex parte* Maier in 42 Am. St. Rep. at pp. 138-144.

The conflict between game laws and the interstate commerce clause of the Federal Constitution is the subject of a note to *State* v. *Geer*, 13 L. R. A. 804, and has recently been passed upon by the federal court in the State of Washington under a precisely similar statute: *In re Davenport*, 102 Fed. 540.—REPORTER.

The defendant, L. Schuman, was charged in the Justice's Court of Portland District with unlawfully having in his possession for sale, offering for sale, and selling, seven trout. A plea of not guilty having been entered, the cause was submitted upon the following agreed statement of facts : "It is hereby stipulated and agreed, by and between the parties hereto, that the defendant is a dealer in fish, and operates and runs a fish market, in the City of Portland, in the State of Oregon; that on the third day of March, 1899, the said defendant, within the said City of Portland, Multnomah County, State of Oregon, had in his possession, and offered for sale and sold, the trout mentioned in the complaint herein ; that said trout were lawfully caught in the State of Washington and shipped into the State of Oregon to said defendant, and said defendant received said trout within the city, county, and state aforesaid, for the purpose of selling the same in said city, county, and state." The court upon this evidence found the defendant guilty, and sentenced him to pay a fine, from which judgement he appealed to the circuit court, where the cause was again submitted upon said stipulation, and, the jury having found him guilty as charged, he was sentenced to pay a fine of $20, from which he appeals to this court.

For appellant there was an oral argument by Messrs. *Raleigh Stott* and *Ernest E. Merges*, with a brief to this effect :

The act of February 20, 1899, prohibiting the sellling, offering for sale, or having in possession for sale, any species of trout at any time, does not, and was not intended to, apply to trout lawfully caught in another state and shipped into Oregon as an article of commerce : *State v. McGuire*, 24 Or. 366 (21 L. R. A. 478, 33 Pac. 666);

*Dickhaut* v. *State*, 85 Md. 451 (60 Am. St. Rep. 332, 36 L. R. A. 765, 37 Atl. 21).

This act could have no extraterritorial effect, even if such had been the intention of the legislative assembly : *Commonwealth* v. *Wilkinson*, 139 Pa. St. 304 (21 Atl. 14).

We assert with confidence that no person's property or business can be taken or destroyed under this undefined power unless the public health, public safety or morals of the state require it : *Butchers' Union Co.* v. *Crescent City Co.* 111 U. S. 746 ; *Allgeyer* v. *State of Louisiana*, 165 U. S. 578 (17 Sup. Ct. 427).

The legislature may not, under guise of protecting the public interests, arbitrarily interfere with private business or impose unnecessary and unusual restrictions upon lawful occupations ; in other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts : *Lawton* v. *State*, 152 U. S. 133 ; *Railroad Co.* v. *Husen*, 95 U. S. 465 ; Tiedeman, Police Lim. §§ 135, 136.

For the state there was an oral argument by *Mr. D. R. N. Blackburn*, Attorney-General, *Mr. Russell E. Sewall*, District Attorney, and *Joseph N. Teal*, with a brief to this effect :

The State of Oregon, in its sovereign capacity and as the representative of its people, is the owner of, and under its police power can protect, its food fishes : *State* v. *Geer*, 61 Conn.144 (13 L. R. A. 144, 22 Atl. 1012, 3 Inters. Com. Rep. 732) ; *Geer* v. *Connecticut*, 161 U. S. 519 (16 Sup. Ct. 600); *Ward* v. *Race Horse*, 163 U. S. 504 (16 Sup. Ct. 1076); *State* v. *Rodman*, 58 Minn. 393 (59 N. W. 1098); *State* v. *Craig*, 80 Me. 85 (13 Atl. 129); *State* v. *Beal*, 75 Me. 289); *Ex parte Maier*, 103 Cal. 476 (42 Am. St. Rep.

129, 37 Pac. 402); *American Exp. Co.* v. *People,* 133 Ill.
649 (9 L. R. A. 138, 24 N. E. 758, 23 Am. St. Rep. 637);
*Lawton* v. *Steel,* 152 U. S. 133 (14 Sup. Ct. 499).

Trout are *feræ naturæ,* and the state can limit and qual-
ify the possession thereof : *State* v. *Theriault,* 70 Vt. 617
(43 L. R. A. 290, 41 Atl. 1030); *Geer* v. *Connecticut,* 161
U. S. 519 (16 Sup. Ct. 600) ; *Allen* v. *Wycoff,* 48 N. J.
Law, 90 (2 Atl. 659, 57 Am. Rep. 548); *Organ* v. *State,* 56
Ark. 267 (19 S. W. 840); *State* v. *Harrub,* 95 Ala. 176
(15 L. R. A. 761, 36 Am. St. Rep. 195, 10 South. 752, 4
Inters. Com. Rep. 99); *McCready* v. *Virginia,* 94 U. S.
391 ; *People* v. *Fishbough,* 134 N. Y. 393 (31 N. E. 983);
*American Exp. Co.* v. *People,* 133 Ill. 649 (9 L. R. A. 138,
23 Am. St. Rep. 637, 24 N. E. 758); *State* v. *McGuire,*
24 Or. 366 (21 L. R. A. 478, 33 Pac. 666); *Commonwealth*
v. *Barber,* 143 Mass. 278 (10 N. E. 330); *Commonwealth* v.
*Savage,* 155 Mass. 278 (29 N. E. 468).

When trout are imported into the state they are subject
to its laws from the moment they become a part of its
general property, and a law prohibiting their sale abso-
lutely is constitutional : *Merritt* v. *People,* 169 Ill. 218
(48 N. E. 325) ; *Magner* v. *People,* 97 Ill. 320 ; *Ex parte
Maier,* 103 Cal. 476 (42 Am. St. Rep. 129, 37 Pac. 402) ;
*Roth* v. *State,* 51 Ohio St. 209 (37 N. E. 259, 46 Am. St.
Rep. 566) ; *Phelps* v. *Racey,* 60 N. Y. 10 (19 Am. Rep.
140) ; *State* v. *Randolph,* 1 Mo. App. 15 ; *State* v. *Judy,*
7 Mo. App. 525; *State* v. *Farrell,* 23 Mo. App. 176 ; *Com-
monwealth* v. *Savage,* 155 Mass. 278 (29 N. E. 468); *Com-
monwealth* v. *Barber,* 143 Mass. 560 (10 N. E. 330).

The statute is perfectly plain and unambiguous, and is
sufficiently broad and comprehensive to include the inhib-
ited article wheresoever taken or procured : *Ex parte
Maier,* 103 Cal. 476 (42 Am. St. Rep. 129, 37 Pac. 402) ;
*Commonwealth* v. *Savage,* 155 Mass. 278 (29 N. E. 468) ;

*Merritt* v. *People,* 169 Ill. 218 (48 N. E. 325) ; *Magner* v. *People,* 97 Ill. 320 ; *State* v. *Craig,* 80 Me. 85 (13 Atl. 129) ; *Roth* v. *State,* 51 Ohio St. 209 (46 Am. St. Rep. 566, 37 N. E. 259) ; *Phelps* v. *Racey,* 60 N. Y. 10 (19 Am. Rep. 140) ; *State* v. *Randolph,* 1 Mo. App. 15 ; *State* v. *Judy,* 7 Mo. App. 525 ; *State* v. *Farrell,* 23 Mo. App. 176.

Mr. Justice Moore, after stating the facts, delivered the opinion of the court.

1.   It is contended that the act under which defendant was convicted was not intended to apply to trout lawfully caught in another state, and shipped into Oregon.   The statute in question (Laws, 1899, p. 199) is entitled "An act to protect trout and other food fishes and to prevent their destruction by use of powder or chemicals, and providing punishment for a violation thereof."   Section 5 of said act reads as follows :   "It shall be unlawful to sell, offer for sale, or have in possession for sale, any species of trout at any time."   The object of the statute was undoubtedly to protect the trout of this state, and hence it can have no application to trout caught in another state until they are brought into the State of Oregon, and become a part of the general property thereof :   *Ex parte Maier,* 103 Cal. 476 (42 Am. St. Rep. 129, 37 Pac. 402).   Defendant's counsel, to support the legal principle for which they contend, rely upon the case of *State* v. *McGuire,* 24 Or. 366 (21 L. R. A. 478, 33 Pac. 666), in which it was held that to have in one's possession, during a closed season, salmon lawfully caught in the state during the open season, was not in violation of an act making it unlawful to fish for salmon in its waters during certain closed seasons, differing in time as to certain rivers, or to receive or have in one's possession, or offer for sale or transportation, or to transport, during said closed seasons, salmon "which may be caught in any of the streams

as aforesaid." The statute then under consideration, if strictly construed and enforced according to such construction, would have necessitated the destruction of vast quantities of salmon lawfully caught and canned during the open seasons ; in view of which it was held that, if the act was susceptible of two constructions, that should be adopted which would avoid such manifest injustice, and that the words "as aforesaid." did not relate to the streams themselves, but to the time and manner of taking fish from them. In *Commonwealth* v. *Wilkinson*, 139 Pa. St. 298 (21 Atl. 14), it was held that an act of that state which forbade any person to "kill or expose for sale, or have in his possession after the same has been killed, any quail," between certain dates in each year, did not prohibit the selling or having possession, during said period, of quail killed in, and imported from, another state. In *Dickhaut* v. *State*, 85 Md. 451 (60 Am. St. Rep. 332, 36 L. R. A. 765, 37 Atl. 21), the Supreme Court of Maryland, relying upon the case of *State* v. *McGuire*, 24 Or. 366 (21 L. R. A. 478, 33 Pac. 666), held that an act of the legislative assembly of that state which forbade having rabbits in one's possession during certain months did not apply to such game when killed in another state, and shipped into Maryland during the closed season. In the cases to which attention has been called it was lawful to have in one's possession, and to offer for sale, during certain months, the game in question, and, inasmuch as the acts are each susceptible of two constructions, it was properly held that such possession or offering for sale was not an offense thereunder. In the case at bar, however, the act provides that, "it shall be unlawful to sell, offer for sale, or have in possession for sale, any species of trout at any time." There is no open season reserved, and no saving clause under which trout may be sold, and the statute, being mandatory in character, and not sus-

ceptible of two constructions, but certain and unambiguous in its terms, it applies with as much force to trout shipped into this state and becoming a part of its general property as to those caught within its limits : *Ex parte Maier*, 103 Cal. 476 (42 Am. St. Rep. 129, 37 Pac. 402) ; *Roth* v. *State*, 51 Ohio St. 209 (46 Am. St. Rep. 566, 37 N. E. 259) ; *Phelps* v. *Racey*, 60 N. Y. 10 (19 Am. Rep. 140); *State* v. *Randolph*, 1 Mo. App. 15 ; *State* v. *Farrell*, 23 Mo. App. 176 ; *Commonwealth* v. *Savage*, 155 Mass. 278 (29 N. E. 468) ; *New York Ass'n* v. *Durham*, 51 N. Y. 306.

2. It is contended that the trout having been lawfully caught in the State of Washington, and shipped as an article of commerce into this state, the defendant had an unqualified title to them ; and, since no presumption of his guilt can be indulged, it must be inferred that he sold them in the original package ; and, this being so, to hold that the selling complained of was an offense, under the act in question, would render it obnoxious to, and violative of, Article I, § 8, subd. 3, of the Constitution of the United States, as being an attempt on the part of the legislative assembly to regulate interstate commerce. But we do not consider it necessary to pass upon this question, as it does not appear to have been raised in the court below. The transcript shows that the stipulation was offered in evidence, and that the court thereupon instructed the jury that, if the facts agreed upon were true, the defendant was guilty, and refused to charge, when requested, that, upon the evidence submitted, the jury should return a verdict of not guilty, to which rulings exceptions were taken. It does not appear that the attention of the trial court was called to the claim of immunity from prosecution under the state law because of the sale being made in the original package. In *State* v. *Tamler*, 19 Or. 528 (9 L. R. A. 853, 25 Pac. 71), it was held that a motion

asking the court to direct an acquittal in a criminal case on account of the failure of proof, unless such failure is a total one, must specify wherein it is claimed such proof fails. Mr. Justice BEAN, speaking for the court in deciding the case, says : "If counsel for defendants relied upon the grounds urged here for asking the court below to direct an acquittal of his clients, he should have so stated, and thereby given the court an opportunity to have passed upon them, and, if the ruling was against him, preserve the same on the record, so we could be advised thereof. It is very possible that the grounds upon which the appellant now contends the motion should have been granted might have been obviated at the trial, had they been stated. We are not advised from the record what reason, if any, was assigned in the court below why this motion should have been allowed, nor what question the court actually did decide. We have repeatedly held that error is never presumed, but must be made to affirmatively appear, and, in a case of this kind, the motion should direct the attention of the court and opposite counsel to the precise point made and the grounds thereof."

3.  The rule of practice is universal that, under Section 709, Rev. St. U. S., the immunity denied must be specially set up, at the proper time and in the proper way, in the court below. Mr. Chief Justice WAITE, in *Spies* v. *State of Illinois*, 123 U. S. 131 (8 Sup. Ct. 21), in discussing this question, says : "To give us jurisdiction under Section 709 of the Revised Statutes, because of the denial by the state court of any title, right, privilege, or immunity claimed under the constitution or any treaty or statute of the United States, it must appear on the record that such title, right, privilege, or immunity was specially 'set up or claimed' at the proper time, in the proper way. To be reviewable here, the decision

must be against the right so set up or claimed. As the supreme court of the state was reviewing the decision of the trial court, it must appear that the claim was made in that court, because the supreme court was only authorized to review the judgment for errors committed there, and we can do no more." To the same effect see *Hoyt v. Shelden*, 1 Black, 518; *Maxwell v. Newbold*, 59 U. S. (18 How.) 511 ; *Texas and Pacific Ry. Co. v. Southern Pac. Co.* 137 U. S. 48 (11 Sup. Ct. 10) ; *Caldwell v. Texas*, 137 U. S. 692 (11 Sup. Ct. 224) ; *Sayward v. Denny*, 158 U. S. 180 (15 Sup. Ct. 777) ; *Brown v. Massachusetts*, 144 U. S. 573 (12 Sup. Ct. 757) ; *Powell v. Brunswick County*, 150 U. S. 433 ( 14 Sup. Ct. 166) ; *Duncan v. Missouri*, 152 U. S. 377 (14 Sup. Ct. 570) ; *Miller v. Texas*, 153 U. S. 535 (14 Sup. Ct. 874) ; *Moore v. Missouri*, 159 U. S. 673 (16 Sup. Ct. 179) ; *Chemical Nat. Bank v. City Bank of Portage*, 160 U. S. 646 (16 Sup. Ct. 417) ; *Dibble v. Bellingham Bay Land Co.* 163 U. S. 63 (16 Sup. Ct. 939).

4.   It is also contended that the trout were wholesome food, and that as long as they remained in that condition they could not become subject to the police power of the state, and that the act prohibiting their sale is tantamount to their destruction, and, if enforced, is a violation of the Fourteenth Amendment of the Constitution of the United States, inasmuch as it would result in depriving the defendant of his property without due process of law. The statute permits the person to have such fish in his possession, to eat them, or give them away, and hence it does not deprive him of his title, but qualifies or limits the rights appurtenant thereto. In *Roth v. State*, 51 Ohio St. 209 (46 Am. St. Rep. 566, 37 N. E. 259), it was held that an act of the legislative assembly of Ohio forbidding the sale of quail applied to such game when killed in another state, and shipped into Ohio, and that said act was constitutional, the court saying : "Every one is pre-

sumed to know the law, and persons who acquire such property when the statute is in force take it subject to its provisions." In *State* v. *Farrell*, 23 Mo. App. 176, it was held that an act of the legislative assembly of Missouri forbidding the possession of quail applied to such game when killed in another state, and brought into Missouri, and that such act did not violate any provision of the Constitution of the United States. To the same effect see *Phelps* v. *Racey*, 60 N. Y. 10 (19 Am. Rep. 140) ; *State* v. *Randolph*, 1 Mo. App. 15 ; *State* v. *Judy*, 7 Mo. App. 524.

5. The trout which defendant sold were undoubtedly wholesome food, and the prohibition of their sale by the act under consideration was evidently not predicated upon the usual grounds for the exercise of police power ; for their consumption as food would not necessarily subvert the morals, impair the health, or disturb the peace of society. But we do not understand that a commodity must possess any of these properties to render it subject to the exercise of such power. That the state, acting in its sovereign capacity, for the best interest of all its citizens, may prohibit the taking or sale of fish within its borders, is settled beyond controversy. When trout are caught in another state, and brought into and mingled with and become a part of the mass of the property of this state, they become subject to the laws thereof, and defendant, having imported them with knowledge of the existence of such law, must suffer the penalties which it prescribes. It follows that the judgment is affirmed.    AFFIRMED.