71 325
110 325

## THE PEOPLE v. THOMAS O'NEIL.

*Game laws—Importation from another state—Possession—Evidence.*

1. That quail and other wild fowl or birds fit for food come within the meaning of the word " game" there can be no doubt.
2. How. Stat. § 2202, does not apply to quail killed in another state, and brought into this State after they are killed.

*Certiorari* to a police justice of Detroit, to review a conviction under the game law. Argued June 27, 1888. Decided July 11, 1888. Conviction reversed and prisoner discharged. The facts are stated in the opinion.

*Henry M. Cheever,* for respondent.

*Moses Taggart,* Attorney General, and *George F. Robison,* Prosecuting Attorney, for the people. .

[The points of counsel and authorities are fully stated and reviewed in the opinion.—REPORTER.]

CHAMPLIN, J.    Section 2 of Act No. 251, Laws of 1881, enacts :

"No person shall kill or destroy, or attempt to kill or destroy, any colin or quail, sometimes called 'Virginia partridge,' save only during the months of November and December of each year ; nor kill, nor attempt to kill, any pinnated grouse or prairie chicken, before September 1, 1882, and thereafter only in the months of September and October in each year."

Section 5 of the act provides :

"No person shall sell, or expose for sale, or have in possession for the purpose of selling, or exposing for sale, any of the kinds or species of birds protected by this act, after the expiration of eight days next succeeding the times limited and prescribed for the killing of any such birds."

The act declares a violation of its provisions a misdemeanor, and imposes a penalty of $50 for each offense on conviction; and, if the penalty is not paid, the offending person shall be committed to the common jail of the county until the penalty is paid, but such imprisonment shall not exceed 30 days.

Thomas O'Neil was complained of on May 7, 1888, in the police court of the city of Detroit, which complaint charged him with—

"Having in his possession, for the purpose of selling, a large number of quail, being game birds to the complainant unknown, on the 9th day of April, 1888."

He was arraigned and pleaded not guilty, and was tried before Edmund Haug, a police justice. The testimony showed that on April 9, 1888, the defendant had in his possession two dozen quail. The defendant testified that he had in his possession, on said April 9, two dozen quail, but that he purchased them in the state of Missouri in the month of December, 1887; that he had received them in the regular course of his business during said month of December, and had preserved them on ice from the day he received them until said April 9, and that he had them then and there for sale.

The justice found the defendant guilty, and imposed the penalty of $50, and $3 costs, and sentenced the defendant to stand committed to the House of Correction in the city of Detroit until such fine was paid, provided such imprisonment should not exceed 30 days. The defendant sued out a writ of *certiorari* from this Court, and alleges the following errors in the record:

"1. The court erred in finding the defendant guilty on the evidence.

"2. The court erred in finding the defendant guilty under the law.

"3. The complaint does not set forth any offense known to the law.

"4. The statute under which the complaint was brought does not prohibit the having in possession, and exposing for sale, any quail killed in another state, and brought into the State of Michigan after they are killed.

"5. The law in question prohibits the having in possession, with intention to sell, quail which are 'protected' by the act only, and the only quail protected by the act are quail which are alive and at large within the State of Michigan.

"6. The provisions of the law prohibiting the having in possession quail with intent to sell the same is unconstitutional and void, in that the object of the act in this regard is not expressed in its title."

If the statute applies to quail killed in another state, and brought into this State after they are killed, then both the complaint and evidence were sufficient to sustain a conviction. The objection that the object of the law, as to the possession of game being unlawful, is not expressed in its title, and therefore unconstitutional, is without force, and is overruled. The main objection, and the one most strongly urged upon the argument, is that based upon the fourth assignment of error, viz.:

"The statute does not prohibit the having in possession, and exposing for sale, any quail killed in another state, and brought into the State of Michigan after they are killed."

This precise question is not a new one to the courts. In February, 1876, the case of *State v. Randolph*, 3 Cent. Law J. 187, was decided in the St. Louis court of appeals under a similar statute, in which the same objection was taken, and the court said:

"The game laws would be nugatory, if, during the prohibitory season, game could be imported from the neighboring states. It would be impossible to show, in most instances, where the game was caught."

The conviction was had under a statute which provided that—

"It shall be unlawful for any person to purchase, have in possession, or expose for sale any of the birds or game mentioned in the preceding section of this act during the season when the catching or injuring the same is prohibited."

It was shown that the birds (prairie chickens) were imported from the state of Kansas, and sold to the defendant, and it was claimed that the statute was a violation of the Constitution of the United States; Congress alone having power to regulate commerce among the several states. The court held that the act did not violate this provision of the Constitution, and that the state of Missouri had the right to preserve its game, and to prohibit the exhibiting for sale within the state of provisions out of season. The decision did not enter into an extended argument of the principles upon which it was based.

In February, 1875, the same question came before the court of appeals of the state of New York in *Phelps v. Racey,* 60 N. Y. 10, under a statute which declared that—

"No person shall kill or expose for sale, or have in his or her possession after the same has been killed, any quail, between the 1st day of January and the 20th of October, under a penalty of twenty-five dollars."

The defendant was convicted under this section. He had invented an apparatus to preserve game; and the game which he had in possession, and specified in the complaint, was put up by him in his apparatus in the month of December, when the killing was lawful in New York state, or was received from the states of Minnesota and Illinois, where the killing was, at the time, legal.

Church, C. J., in delivering the opinion of the court, said:

"The language of these sections is plain and unambiguous. Hence there is no room for construction. It is a familiar rule that, when the language is clear, courts have no discretion but to adopt the meaning which it imports. The mandate is that 'any person having in his or her possession,' between certain dates, certain specified game killed, shall be liable to a penalty. The time when or the place where the game was killed, or when brought within the State, or where from, is not made material by the statute; and we have no power to make it so. * * * That it was either killed within the lawful period, or brought from another state where the killing was lawful, constitutes no defense. The penalty is denounced against the selling or possession after the time, irrespective of the time or place of killing."

The court further held that the Legislature had power to enact the law, and that it was not in conflict with the Constitution of the United States.

Two years later the same question came before the high court of justice in England, presided over by Lord Coleridge, in the case of *Whitehead v. Smithers*, 2 C. P. Div. 553, 21 Moak, Eng. R. 458. It was provided by section 2 of an act (39 and 40 Vict. c. 29) that any person who shall have in his control or possession any wild fowl recently killed, wounded, or taken, between the 15th of February and the 10th of July in any year, shall, on conviction, forfeit and pay for every such wild fowl so killed, wounded, or taken, or so in his possession, not exceeding one pound, with costs of the conviction. The defendant had purchased the birds, which had been killed in Holland, and consigned to and received by Mr. Howard, a poulterer, and it was claimed for defendant that the statute did not apply to birds killed in Holland, and imported into the United Kingdom.

Lord Coleridge said:

"I am of opinion that that argument is not well founded. It is said that it would be a strong thing for the legislature of the United Kingdom to interfere with the rights

of foreigners to kill foreign birds. But it may well be that the true and only mode of protecting British wild fowl from indiscriminate slaughter, as well as of protecting other British interests, is by interfering indirectly with the proceedings of foreign persons. The object is to prevent British wild fowl from being improperly killed and sold under pretense of their being imported from abroad."

In February, 1881, the supreme court of Illinois, in the case of *Magner v. People*, 97 Ill. 320, under a statute similar to ours, held that the defendant, who was a retail dealer in game in the city of Chicago, and who had bought a box of quail on December 20, from a dealer in Leavenworth, in the state of Kansas, who shipped them to defendant, and were by him received on December 23, but who sold them in Chicago on January 15, was liable to the penalty provided by the statute, notwithstanding it was lawful to purchase and receive the quail in Chicago at the time these arrived. The season closed on January 1, and the act made it unlawful, after five days from that date, for any person to sell or expose for sale, or have in his or their possession for the purpose of selling, or exposing for sale, any of the wild fowls or birds mentioned in section 1 of the act, which included quail.

In February, 1885, a decision was rendered in the case of *Game Ass'n v. Durham*, 51 N. Y. Super. Ct. 306, in which the court followed *Phelps v. Racey, supra;* and the defendant was mulcted in penalties in the sum of $5,000 under circumstances which rendered such construction of the law peculiarly odious.

Durham was a commission merchant doing business in the city of New York. Warner, a resident of Chicago, Ill., consigned a few boxes and barrels of quail from Chicago, Ill., to Durham, to sell on commission. The season in New York did not close until February 1. The birds were received in New York, January 2. The consignor directed Durham not to sell short of two dol-

lars a dozen, and to put the birds in a refrigerator. Durham accordingly delivered the birds to a refrigerator company, where they were stored so as to preserve them.

No sales were made during January, but in February a portion of the birds were withdrawn from the refrigerator company, and some of them sold in the city. The remainder Warner withdrew from the company, and the opinion does not disclose what became of them. ·The court, however, held that all of the quail were in possession of defendant, in violation of law, after the time limited for the open season, and affirmed the conviction of the trial court.

In *State v. Judy*, 7 Mo. App. 524, that court held that the statute prohibiting the killing or having in possession certain game is not unconstitutional, either as depriving one of his property without due process of law or as in restraint of commerce.

A construction of a statute which leads to such harsh consequences, and punishes with severe penalties acts which are confessedly innocent in themselves, must not only be unambiguous, but mandatory ; and the act done must be not only within the letter, but within the spirit, of the law to gain my assent to its enforcement. Our statute requires no such strict or harsh construction. The articles interdicted are articles of food, and the interdiction is not because such food is unwholesome, and therefore detrimental to the public health, but the whole end and object of the legislation is to protect and preserve game in the State of Michigan. The first legislation upon the subject was in 1863 (Act No. 236). The Constitution requires the object of every act of the Legislature to be expressed in its title. The title to this act was,—

" An act to provide for the protection of game in the State of Michigan."

. In 1865, section 2 of this act was amended. In 1869 a new act was passed, entitled—

" An act to revise and consolidate the several acts relating to the protection of game, and for the better preservation of elk, deer, birds, and wild fowl."

This was afterwards amended in 1873, 1875, 1877, 1881, and 1887; but the revision and all the amendments had but one object, and that was the same stated in the original act, to protect and preserve the game of this State. The various provisions of the act are all directed to that purpose. And how it can be held that this law is violated, either in letter or spirit, by importing game from other states to supply food to citizens of this State, is a point that I am unable to understand. The only ground upon which such construction is attempted to be defended, is that it prevents evasion of the statute; that game might be killed in this State in violation of law, and shipped to another state, and there reshipped into this State, and the prosecution might be unable to prove that it was Michigan game killed in violation of law. That may disclose a defect of proof; but I submit it does not apply to cases where the fact is conceded or proved to the satisfaction of the jury that the game was not killed in violation of law. This difficulty of proof has been remedied by the Legislature.

Act. No. 68 of the Laws of 1887 enacts—

" That in all prosecutions for the violation of any of the laws for the protection and preservation of game and fish, proof of the possession of any such game or fish, or of the skin, carcass, or any portion of the skin or carcass of such game or fish, at any time when the killing, taking, or having in possession any of such game or fish is by law prohibited, shall be *prima facie* evidence of the violation of the law by the person or persons in whose possession the same shall have been found."

That quail and other wild fowl or birds fit for food

come within the meaning of the word "game" there can be no doubt. They are so recognized by the game laws of England, and of New York, Massachusetts, and other states, which have passed acts for the preservation of game, and are mentioned in the act of 1863 under a title "to provide for the protection of game in the State of Michigan."

Act No. 68 is a legislative construction of the game law under which this prosecution is had, and it is in consonance with the view that it is not a violation of the law to have in possession and selling game imported into this State from other states, or killed in this State, when it was lawful to do so. It was right and proper for the Legislature to cast the burden of proof upon those having such game in their possession when the killing is by law prohibited, and fully protects the State from its evasion.

The game law of Massachusetts contains a similar provision; and in *Com. v. Hall*, 128 Mass. 410, it was held that—

"Saying that possession should be *prima facie* evidence necessarily implies that it shall not be conclusive; if the mere possession of birds, during the time within which the taking or killing of them is prohibited, of itself constituted an offense under the previous sections of the statute, to say that such possession should be *prima facie* evidence would be superfluous, if not absurd."

The court, Gray, C. J., delivering the opinion, further said:

"The object of the statute is to protect these birds during the breeding season, and for such a reasonable portion of the year as may prevent them from being exterminated or their numbers diminished in this Commonwealth. The mode in which the statute seeks to attain this object is by punishing the taking or killing of such birds in this Commonwealth during the times specified, or the buying, selling, offering for sale, or hav-

ing in possession, in this Commonwealth, during those times, of birds so taken or killed, and by enacting that the possession in this Commonwealth, at such times, of any birds of the kinds specified, shall be *prima facie* evidence to convict, leaving it for the defendant to prove, if he can, that the birds found in his possession were not taken or killed in this Commonwealth at a prohibited time. So construed, the statute is reasonably adapted to carry out its objects, and is free from all constitutional difficulty."

In *Allen v. Young*, 76 Me. 80, it was held that where a statute made it an offense to kill deer at a certain time, or to transport it from place to place during that time, it was not an offense to transport from place to place, during the prohibited season, deer killed before. Defendant had killed a deer before the season closed, and had the carcass and skin in his possession after it had closed. He then took them to a railroad station to be shipped to market, when they were seized by the game-warden. A section of the statute with reference to the possession of the carcass of a deer made the person in possession liable to a penalty, but contained the proviso that he should not be precluded from producing proof in his defense; but this proviso was not contained in the section relative to the carrying or transportation of the carcass or skin from place to place in the state, and the court held that it would apply the same meaning to the latter section, and the defendant might show that the deer was not killed in violation of law.

We think the conviction should be reversed, and the prisoner discharged.

SHERWOOD, C. J., and LONG, J., concurred with CHAMPLIN, J.

CAMPBELL, J. Concurring, as I do, in the meaning of our statute as explained by my Brother CHAMPLIN, I do so for the further additional reason that I do not think

it would be competent for our Legislature to punish the possession of game which was lawfully captured or killed. Having become lawful private property, it cannot be destroyed or confiscated, unless it becomes unfit for use, any more than other property can be destroyed. I do not think the cases to the contrary are reasonable or sound. While in England the power of parliament cannot, perhaps, be questioned by courts, there is no such rule here, and I cannot see on what principle such decisions are maintainable. It is not competent for any American statute to raise conclusive presumptions of guilt in any case. This is well settled. When the possession is traced back of the time when it became unlawful to take game, the presumption has no further force as evidence, and what was then lawful cannot be made a crime by lapse of time only.

MORSE, J., concurred with CAMPBELL, J.