324:36 LRA

PEOPLE v. O'NEIL.

1. GAME LAWS—SALE OF IMPORTED GAME—INTERSTATE COMMERCE.
It is competent for the State, for the enforcement of its game laws, to prohibit absolutely the importation and sale of game and fish during a closed season, or during the entire year.

Therefore, Act No. 196, Pub. Acts 1893, prohibiting the sale, exposing for sale, or having in possession for the purpose of sale, any kind of bird, game, or fish during a closed season, and Act No. 223, Pub. Acts 1895, prohibiting specifically the sale of quail, woodcock, and partridge at any season of the year, are not invalid as unlawfully restricting interstate commerce.[1]

---

[1] On the question of game laws as affecting interstate commerce, there is a note to State v. Geer, (Conn.) 13 L. R. A. 804.

2. SAME—POLICE POWER—CONSTITUTIONAL LAW.

    The legislature may, in the exercise of its police power, for the
      protection of game and fish, prohibit the sale of the same,
      though lawfully acquired, and though an article of food not
      deleterious in itself.

  Exceptions before judgment from the recorder's court
of Detroit; Chapin, J.    Submitted January 30, 1896.
Decided July 28, 1896.

  Thomas W. O'Neil and Jacob H. Hoffner were con-
victed of violating the game laws.    Affirmed.

  *T. E. Tarsney* and *W. W. Wicker*, for appellants.

  *Fred A. Maynard*, Attorney General, *Allan H. Fra-
zer*, Prosecuting Attorney, and *Henry A. Mandell*, As-
sistant Prosecuting Attorney, for the people.

  MONTGOMERY, J.    The exceptions before judgment are
presented in two cases of the same title, which are heard
upon one record, in the first of which the respondents are
charged with selling brook trout on the 9th of September,
1895, and in the other of which they are charged with
selling a quantity of quail on the 28th of October, 1895.
The prosecutions are based on section 5 of Act No. 196,
Pub. Acts 1893, and section 5*a*, added to the act in 1895
by Act No. 223.

  The previous legislation upon the subject was consid-
ered by this court at the June term, 1888, in the case of
*People* v. *O'Neil*, 71 Mich. 325.    The act under consider-
ation there was Act No. 251, Pub. Acts 1881, and it
was held by the majority of the court that section 5 of
said act, prohibiting the sale of birds protected by the act
after the expiration of eight days next succeeding the
time limited and prescribed for the killing of any such
birds, was not intended to prohibit the sale of game killed
in other States and imported into this State.    This con-
clusion was reached by considering Act No. 68, Pub.
Acts 1887, a legislative construction of the law of 1881.

It is apparent, however, from a reading of the opinion, that a majority of the court was of the opinion that it was within the power of the legislature to prohibit the sale of game, whether taken within the State or imported into the State. Mr. Justice CAMPBELL, with whom Mr. Justice MORSE concurred, expressed the opinion that it would not be competent for the legislature to punish the possession of game which was lawfully captured or killed. The question of whether such a provision would be an interference with interstate commerce was not considered by Mr. Justice CAMPBELL. The view expressed by him that it would not in any case be competent to prohibit the sale of game lawfully captured or killed is clearly against the great weight of authority, numerous cases having been decided since the decision of *People* v. *O'Neil*, to which reference will be made later.

In 1893, an act, the general scope and purpose of which was to protect the fish and game of the State, was passed, under the title "An act to regulate the possession, use, transportation, and sale of fish and game." Section 1 of the act defines and limits the property right of those who take game the possession of which is at *any or all times* prohibited by the laws of the State. Section 2 prohibits the shipping of game or fish, the taking of which is at *any or all times* prohibited, beyond the limits of the State. Section 3 makes it an offense at any time to have in possession any game or fish caught, taken, or killed outside of the State, which was taken or killed at a time, in a manner, or for a purpose forbidden by the laws of the State where the same was caught or taken. Section 4 makes the possession or having control of any kind of bird, game, or fish, the killing of which is at *any or all times* prohibited by the laws of this State, *prima facie* evidence that it was killed in this State, and attempts to further prescribe what shall be admitted as proof to overcome this *prima facie* presumption. Section 5 reads as follows: "No person, company, or corporation shall sell, or attempt to sell, or expose for sale, or

have in possession or under control for the purpose of selling or exposing for sale, any kind of bird, game, or fish, *at any time when the taking, catching, or killing of such kind of birds, game, or fish is prohibited by the laws of this State,*"—followed by a proviso not material here. This act is comprehensive, and we think it clear that it was the intention of the legislature, by section 5, to prohibit absolutely the sale of game and fish, the taking of which is prohibited by the laws of this State, at certain seasons of the year,—*i. e.*, during the closed season,—and that this section 5 was enacted by the legislature having in view the limitation placed by construction upon section 5 of Act No. 251, Pub. Acts 1881, and for the purpose of obviating that limitation. It is to be noted that the first four sections relate to the possession of fish or game *at any time* during the year, while section 5 relates to the possession of such game or fish during the closed season. Section 5*a*, added in 1895, is limited to quail, woodcock, and partridge, and prohibits the sale or exposing for sale of either of these kinds of birds at any season of the year.

On the trial of the case the respondents offered to show that the trout and quail were respectively shipped into this State from Illinois as articles of food. This testimony was excluded, and it is now contended that the statute is unconstitutional, for the reason that it constitutes an unlawful restriction of the right of interstate commerce, and for the further reason that the legislature has no power to forbid the sale of articles of food, except in the exercise of its police power, and that in the exercise of the police power it cannot prohibit the sale of an article of food which is not deleterious in itself. As was stated in *People* v. *O'Neil, supra*, this question is not a new one to the courts. In *State* v. *Randolph*, 1 Mo. App. 15, it was said:

" The game law would be nugatory if, during the prohibited season, game could be imported from the neigh-

boring States. It would be impossible to show, in most instances, where the game was caught."

See, also, the other cases cited in *People* v. *O'Neil*, and *American Express Co.* v. *People*, 133 Ill. 649 (23 Am. St. Rep. 641); *Com.* v. *Savage*, 155 Mass. 278; *Roth* v. *State*, 51 Ohio St. 209 (46 Am. St. Rep. 566); *Ex parte Maier*, 103 Cal. 476 (42 Am. St. Rep. 129); *Geer* v. *Connecticut*, 161 U. S. 519,—which latter case contains a review of the authorities, and an interesting discussion of the subject. The cases cited abundantly establish the doctrine that it is competent for the legislature, for the purpose of protecting game or fish, to absolutely prohibit the sale of fish or game caught within the limits of the State during a closed season or during the entire year. The question of the right to prohibit the importation and sale of game or fish, with the same purpose, is discussed, and the right affirmed, in *Ex parte Maier*, and the right is also assumed in numerous of the other cases referred to.

We think the statute is valid, and that the convictions should be sustained, and the court below directed to proceed to judgment.

The other Justices concurred.