## Commonwealth, Appellant, v. Beilstein.

*Fish laws—Wall-eyed pike—Criminal law—Act of May* 29, 1901, *P. L.* 302, *and May* 29, 1901, *P. L.* 335.

A person cannot be convicted under the Act of May 29, 1901, sec. 3, P. L. 302, for having in his possession for sale wall-eyed pike, in the city of Allegheny, between February 15 and June 15, where it appears that the fish in question were lawfully caught in the waters of Lake Erie under the permission granted by the Act of May 29, 1901, P. L. 335. In a prosecution on such a charge the burden is upon the defendant to prove that the fish were lawfully caught and killed in Lake Erie.

Argued Oct. 2, 1905. Appeal, No. 37, April T., 1906, by plaintiff, from judgment of Q. S. Allegheny Co., March T., 1905, No. 37, reversing judgment of justice of the peace in case of Commonwealth v. Charles Beilstein. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDER-SON, JJ. Affirmed.

Appeal from summary conviction. Before SHAFER, J.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was the judgment of the court.

*John W. Hague,* for appellant.—The very fact that a party has in his possession, killed game fish, during the close season, has always been recognized as pointing to a violation of the close season, and has always been considered an effective police regulation. To permit wall-eyed pike and other game fish, to be sold by fishermen, of the boundary lakes, throughout this commonwealth during the close season, is at once to destroy

the effect of the having possession of killed game fish as a police regulation; and to occasion such a condition as will shut the door against the discovery of violations of the fishing laws.

*J. M. Shields,* for appellee, cited: Com. v. Wilkinson, 139 Pa. 298.

OPINION BY MORRISON, J., November 20, 1905 :

The defendant was charged and convicted before an alderman of the city of Pittsburg with having in his possession, the same being killed, ten wall-eyed pike, between February 15 and June 15, contrary to section 3 of the Act of May 29, 1901, P. L. 302. After the conviction of the defendant he appealed to the court of quarter sessions of Allegheny county.

At the hearing in court it was proved and admitted that on April 14, 1905, the defendant had in his possession, for sale, in the city of Allegheny, ten blue pike which fish had been caught in the waters of Lake Erie by a boat and fisherman having a license from the state of Pennsylvania to fish in those waters. For the purpose of trial and decision it was agreed that the fish in question were blue or wall-eyed pike and within the meaning of the acts of assembly in regard thereto.

The defendant, appellee, contended that the provisions of the act of May 29, 1901, did not make it unlawful to have killed wall-eyed pike in his possession in Allegheny county; they having been caught in Lake Erie, and that the thirty-second section of the act expressly provides that the act shall not apply to any lake partly within the boundaries of this state nor to any fish caught in the same.

The learned court below adopted the appellee's theory of the law and reversed the judgment of the magistrate and ordered restitution of the fine and costs. From this judgment the commonwealth appealed and filed the following assignments of error : 1. The court below erred in making the following order for judgment, namely, " The judgment of the magistrate is therefore reversed and restitution of fine and costs is awarded." 2. " The court below erred in holding that the appellee had not violated the third and seventeenth sections of the Act of May 29, 1901, P. L. 302, although the court found that the appellee had in his possession and for sale ten killed wall-eyed pike on

April 14, 1905, in the city of Allegheny, which fish had been caught in the waters of Lake Erie by a boat having a license from the state of Pennsylvania to fish in those waters." 3. " The court erred that the burden of proof was on the commonwealth to show not merely the possession of the forbidden fish, after it had been killed, but that it was in fact killed contrary to law." 4. " The court erred in not sustaining the judgment of the alderman." 5. " The court erred in not holding the right to fish in Lake Erie did not give the right to sell killed wall-eyed pike in Allegheny county, during the closed season, in which it was unlawful to fish in Allegheny county, and in the interior waters of the state for wall-eyed pike."

Careful consideration of the conceded facts in this case and the provisions of law applicable thereto does not convince us that the court erred in reversing the judgment of the magistrate and awarding restitution. The third section of the act of 1901, supra, as to its prohibition and penalty, must be read and considered in connection with the title of the act. By the title the prohibition and penalty is clearly limited to the public waters within the state. The thirty-second section of the same act reads : " The prohibition and penalties provided in this act shall not be construed or held to apply to any waters forming the boundary line between this and any other state, over which this state has concurrent jurisdiction with such state, so far as such waters form such boundary line ; nor to any lake partly within the boundaries of this state, nor to waters on any peninsula or of any bay adjacent to or connected with such lake, nor to any fish caught in any of the waters in this section mentioned."

Section seventeen of the act reads : " That from and after the passage of this act, it shall be unlawful to purchase, sell or offer for sale, or have in possession, the same having been caught in this commonwealth, any dead game or food fish, except during the lawful period for catching the same and the space of six days after such period has expired."

The legislature also passed on May 29, 1901, P. L. 335, an act " for the protection and increase of fish in such parts of boundary lakes, of more than five thousand acres, as this commonwealth has jurisdiction over, and in waters of any peninsula or in any bay adjacent to or connected with such lakes ; to declare the species of fish in said waters which are game fish

and those which are commercially valuable for food; to regulate and provide for the payment of license fees for the catching of the same; to provide penalties and punishments for the violation of any of the provisions of this act, and to repeal all laws inconsistent herewith."

An examination of this act makes it clear that a licensed fisherman may catch and kill the fish in question in the present case, during the closed season as to the waters described in the Act of May 29, 1901, P. L. 302, and, therefore, in our opinion, the legislative intent is clear that the penalty provided in the last mentioned act cannot be made to apply to a person having in his possession and for sale, fish caught in Lake Erie by a boat and fishermen licensed under the provisions of the Act of May 29, 1901, P. L. 335. We think this is made clear by the plain reading of the thirty-second section of the Act of 1901, P. L. 302. In our opinion, it is manifestly unreasonable to suppose that the legislature made it lawful to catch and kill the fish in question in Lake Erie, during the closed season as to the interior waters of the state, and then provided a severe penalty against citizens of Pennsylvania purchasing and having in their possession for sale fish lawfully caught in Lake Erie by duly licensed fishermen. If this is not the correct construction of the acts in question, then what is the meaning of the said thirty-second section? It plainly provides that the prohibition and penalties therein shall not be construed or held to apply to any lake partly within the boundaries of this state nor to any fish caught within the waters in this section mentioned. Manifestly Lake Erie is one of the waters referred to in this section and if the prohibition and penalties do not apply to any fish caught therein, it is absurd to say that the prohibition and penalties apply to a fish dealer in Allegheny county who had in his possession for sale some of the fish, lawfully caught in Lake Erie, to which the said prohibition and penalties do not apply.

We think the question here raised is in principle ruled by Commonwealth v. Wilkinson, 139 Pa. 298. That case arose under the ninth section of the Act of June 3, 1878, P. L. 160, which, as amended by section 1, Act of April 25, 1889, P. L. 53, enacts that " No person shall kill or expose for sale, or have in his or her possession after the same has been killed, any quail or Virginia partridge between the 15th day of December in any

year and the first day of November next following under a penalty of $10.00 for each bird so killed, exposed for sale or had in possession." By the thirty-third section of said act it is provided : " In all cases of arrests made for the violation of each or any of the foregoing sections of this act, the possession of the game, fishes, birds, animals, fowls, nets, or other devices provided for or so mentioned, shall be prima facie evidence of the violation of said act."

The defendant in that case was convicted and fined for having in his possession, within the state of Pennsylvania, some of the prohibited game within the closed season, which had been killed outside of the commonwealth. The Supreme Court, in an opinion by Mr. Chief Justice PAXSON, held : " The meaning of the act, as we view it, is that no quail shall be killed, in this state, between the dates specified, and no person shall have in his possession or offer for sale any quail so killed in this state." The court clearly decided that the prohibition and penalty did not apply to a person in this state having in his possession and offering for sale, within the closed season, quail which had been killed in another state.

We are unable to distinguish the principle involved in that case from the one under consideration. Under the two acts of assembly referred to, the fish caught in Lake Erie lawfully, may be held in possession and sold in Allegheny county precisely on the same ground that the quail killed in another state were lawfully held in possession and offered for sale in this state.

This conclusion requires us to dismiss the assignments of error because none of them require the reversal of the judgment. But before closing we desire to refer to the third assignment. It is not well drawn but it raises the question as to where the burden of proof lay. At the trial the defendant assumed the burden and proved that the fish were lawfully caught and killed in Lake Erie. This we think was correct. The fish being found in the possession of the defendant during the closed season and his defense resting upon the exceptional provisions of the acts of assembly, the burden rested upon him of showing that the fish were caught in Lake Erie. To hold otherwise would have the effect in many cases of making it impossible for the commonwealth to convict a defendant who has in his pos-

session fish unlawfully caught in the inland waters of the state, during the closed season. We think the facts shown by the commonwealth in the present case called upon the defendant to show where the fish were caught, if he desired to make a defense. We, therefore, sustain the third assignment of error but in view of the way in which the case was tried, this does not in any manner impeach the correctness of the judgment. The case was correctly tried and a proper conclusion reached and we sustain this assignment for the reason that we do not wish it to be understood that this court adopts the theory that in such a case the burden rests on the commonwealth of showing where the fish were caught.

The judgment is affirmed.