## Commonwealth v. Berry et al.

A. H. *Lipez*, for Board of Fish Commissioners.
*Henry M. Hipple*, for defendants.

HIPPLE, P. J., February 1, 1949.—This appeal from a summary conviction before a justice of the peace involves the interpretation of sections 22 and 40 of The Fish Law of May 2, 1925, P. L. 448, 30 PS §§22 and 40 as amended.

The Act of 1925 is a codification of the various laws relating to the taking or killing of fish in the inland waters of the Commonwealth and is titled "An Act relating to fish; and amending, revising, consolidating, and changing the law relating to fish in the inland waters and the boundary lakes and boundary rivers of the Commonwealth."

Section 22 provides:

"Charr, commonly called brook trout, or any species of trout, except lake trout and large or small mouth bass, caught during the lawful season respectively provided therefor, may be kept in possession six days after the expiration of such season."

Section 40, as last amended by the Act of June 24, 1939, P. L. 834, sec. 3, 30 PS §40, provides:

"No person, except as in this article otherwise provided, shall in any one day catch, kill, or have in possession more than the number of fish or fish bait hereby designated for the respective species, that is to say: (a) Charr, or trout, of the combined species, ten;".

The phraseology of section 40 was taken in its entirety and without change from the Act of July 28, 1917, P. L. 1215. Article 5, sec. 35 of the Act of 1917 became article 4, sec. 40 of the Act of 1925. From 1925 until 1939 various amendments to section 40 were adopted, none of which changed the phraseology, but reduced the limit of trout which could be caught, killed, or had in possession from 25 to 10.

Separate prosecutions were instituted against each of the defendants before a justice of the peace, the specific charge being that on April 18, 1948, each had in his possession 25 trout in excess of the number, viz., 10, permitted by the Act of 1925, as amended. With the consent of counsel the two cases were consolidated and heard at one time.

From the testimony taken before the court, it was shown that defendants are residents of Avonmore, Westmoreland County, Pa. On April 14, 1948, together with a younger brother, Earl S. Berry, under the age of 18 years, they came to Renovo, Clinton County, Pa., where they remained at the home of their uncle from April 15th until the evening of April 18th. On April 15, 16, 17 and 18, 1948, defendants, together with their brother, fished in various trout streams in Clinton County. On these days they each caught, killed and had in their possession not more than 10 trout, all of which were of legal size. At the close of the day, defendants returned to Renovo, placed their trout in a refrigerator in the home of their grandmother so as to preserve them in order to take them back with them to Avonmore, Pa.

On the evening of April 18, 1948, defendants packed the trout in a container and started to return to their home. While in Clinton County and about 8:30 o'clock p.m. they were stopped by a fish warden who confiscated the trout. Subsequently, the prosecutions in question were instituted against each of them. At

the hearing before the justice of the peace, after having had the information read to them, each defendant was convicted and sentenced to pay a fine of $250, together with costs.

Although the appeal was taken more than five days after their conviction, it was allowed because the petition for the appeal alleged that section 40 of the Act of 1925 was unconstitutional for the reason that it was discriminatory, unreasonable, and amounted to the taking of property without due process of law; that defendants, having legally reduced the fish to their possession, acquired property rights therein; that the section was so vague, indefinite, uncertain, conflicting and inconsistent that the same was unconstitutional because it was so worded as to make it impossible to determine whether the prohibition as to the possession of more than 10 trout in any one day applied to trout legally caught and reduced to possession if the same were not disposed of on the day on which they were caught; that the hearing before the justice of the peace was informally held; that defendants were not properly notified or advised as to their legal rights, that they were improperly advised with respect to their right of appeal and because of the legal questions involved, the justice of the peace, not being learned in the law, was incompetent to hear and determine the same.

In their brief, filed with the court, they state there are three questions involved:

1. Are the words of section 40 of the Act of 1925, "catch, kill, or have in possession" to be construed as three separate and distinct offenses, or situations, or are those words to be construed together?

2. If section 40 of the Act of 1925 is construed to mean not more than 10 trout may be kept in possession at any time, does such interpretation conflict with section 22 of the Act of 1925, so that the same are

irreconcilable or so conflicting that it will produce an unreasonable, arbitrary and absurd result?

3. Can section 22 and section 40 of the Act of 1925 be construed so as not to result in an unreasonable and arbitrary exercise of the police power of the Commonwealth?

Fish in the streams of the Commonwealth are the property of the Commonwealth and, acting through the legislature, the Commonwealth has the sole right to preserve, protect and regulate the method, time and manner of fishing by individuals in such streams. No individual has any natural right to catch fish or to acquire property in them. All the rights he possesses or can possess in this regard are granted to him by the Commonwealth. The power to grant embodies the power to impose conditions and in granting the privilege of reducing trout to possession with proprietary rights, it is competent for the Commonwealth to prescribe such conditions of enjoyment as are deemed reasonable and necessary to protect the common interest. The individual, when he accepts the right or grant given to him by the Commonwealth to fish in trout streams of the Commonwealth, accepts such right or grant impressed with all the restrictions and limitations laid upon it and when he acquires property, that is when he catches trout, under such license or grant he does so with full notice of these qualified rights. Therefore, if he loses that which he has taken or held possession of upon forbidden terms, he has lost nothing that belongs to him, and there has been no taking of property without due process of law, or without just compensation. Trout are not only a delicate food but from their very nature offer alluring sport in the catching thereof, which, if unrestrained, would unquestionably lead to their ultimate extinction. Therefore, any measure which, in the judgment of the legislature, is reasonably calculated to avoid such re-

sults and to preserve these game fish for future benefit, even to the extent of restricting the use or right of possession therein after they have been caught and killed, is a legitimate exercise of legislative power: Commonwealth v. Patsone, 231 Pa. 46-48, 49, affirmed by U. S. Supreme Court, 232 U. S. 138, 58 L. Ed. 539; Smith v. State, 155 Ind. 611, 58 N. E. 1044; State v. Pulos, 64 Oregon 92, 129 Pac. 128.

Counsel for the Commonwealth and defendants have not cited, nor has the court in its independent research, been able to find any appellate or lower court decisions in Pennsylvania relating to the questions here involved. There being no binding appellate court decisions in Pennsylvania, we conclude that the legislature in enacting the Act of 1925, intended to impose criminal sanctions for (1) catching, (2) killing, or (3) having in possession, in any one day, a greater number of the various categories of fish than those prescribed, regardless of the circumstances under which the catching, killing or possession thereof occurred.

Even if these three words, "Catch, kill, or have in possession" are construed together and as one offense, the situation would be the same because in no event, under the prohibitions in the act, can a person kill, catch, or have in possession, more than 10 trout. The language of section 40 is clear and specific. It means exactly what it says, viz.: That no one can catch, kill, or have in possession, more than 10 trout in any one day. The exception thereto in section 42 of the act, 30 PS §42, permitting the catching of more than 10 trout in any one day, if they are returned to the waters from which they were taken, in the condition in which they were caught, is a valid exception. Section 22, permitting trout caught during the lawful season to be kept in possession six days after the expiration thereof, when construed in connection with section 40, simply means that one may have 10 trout,

lawfully caught during the season provided therefor, in his possession for a period of six days after the expiration of the season, and therefore no person catching 10 trout on the last day of the season is required to immediately dispose of them before the expiration of the season in question but may retain them for a period of six days.

The intent of section 22 was to extend *the open season for possession* six days beyond the end of the open season for catching or killing. There is nothing unreasonable, arbitrary or absurd in construing the act in this manner, nor does such construction result in an unreasonable and arbitrary exercise of the police power of the Commonwealth. A similar provision exists in the Game Law of June 3, 1937, P. L. 1225, whereby one may keep venison in his possession for a certain period after the close of the deer or big game season. A like provision in a statute in Michigan relating to possession of birds protected by the statute which permitted the possession thereof for a period of eight days following the closed season was upheld in the case of People v. O'Neil, 71 Mich. 325, 39 N. W. 1. The court there stated that the purpose of the legislation was to protect and preserve game at large in the State. Likewise, the purpose of the Act of 1925 is to protect and preserve game fish in the Commonwealth. Sections 22 and 40 of the act are not in irreconcilable conflict. The former relates merely to possession during a certain period after the closed season, the latter relates to daily catches. When construed together, as they must be, they simply mean that not more than one day's catch, viz., 10 trout, may be lawfully possessed at one time during the six-day period immediately following the close of the trout fishing season.

Defendants illustrate their position by two examples. They state that two separate individuals may each catch 10 legal trout in one day and give the 20 trout

so caught to a mutual friend. Although the recipient of the gift of the 20 trout has done nothing to diminish or reduce the supply of trout, he could not, under the strict construction of the act, have in his possession more than 10 of the trout legally caught even though he had nothing to do with the catching or killing the same. We agree with that contention. However, one of the outstanding purposes of the act is to prevent the accumulation of trout in the possession of one individual, even though such individual has neither caught nor killed them. If such were not the case, there would be nothing to prevent an individual from receiving any number of trout from one, two or more individuals, and accumulating a large supply. In fact, an instance of this kind occurred during 1948 in a county in this judicial district. Suspicion was aroused because four or five men came to the same stream very frequently and each caught 10 legal trout every day they fished. Upon investigation it was discovered that these trout were delivered to a person in an adjoining county and that this individual had in his possession over 150 legal trout, some of which were spoiled. It is to prevent such wholesale accumulation of trout that the act prohibits the possession of more than 10 trout in any one day.

Again, defendants contend that an individual may fish on the first day of the season, catch 10 trout, but as long as he retains these trout in his possession he is prohibited from fishing any more during the season unless he disposed of them in any manner that he may see fit, even to the extent of destroying them. There may be some fishermen, not sportsmen, who would in fact destroy trout in order to catch additional fish, but they are in the minority and are in the same class as persons, calling themselves sportsmen, who hunt during the big game season and to gratify a

wanton desire to kill, shoot female deer or cub bears and leave the carcasses lying in the woods.

Defendants cite Lehman v. Penna. Game Commission et al., 34 D. & C. 662, and Commonwealth v. Beilstein, 29 Pa. Superior Ct. 373. Neither of these cases is in point. In the Lehman case, the sole question involved was the legality of a resolution of the Game Commission providing for an open season on antlerless deer in certain sections of the Commonwealth and did not involve the interpretation of any act of assembly. In the Beilstein case, the facts and the acts of assembly under which the prosecution was brought were entirely different.

Unlike the situation some 30 or 35 years ago, when many trout streams were practically inaccessible, today with improved highways and even good dirt roads throughout the mountains themselves, almost all of the streams in the Commonwealth are readily accessible by automobile, the number of fishermen has greatly increased and it has become necessary for the Commonwealth to stock the streams throughout the Commonwealth with large numbers of trout each year. According to the report of the Fish Commission for 1947, there were stocked in the streams of the Commonwealth during that year a total of 2,075,522 legal sized trout aggregating in weight 305 tons, and 2,954,594 trout known as fingerlings in addition to large numbers of other kinds of game fish. To raise and distribute this large quantity of fish is a matter of great expense.

Defendants cite the case of State v. McGuire, 24 Oregon 366, 33 Pac. 666, 21 L. R. A. 478, for the proposition that so long as the initial daily catch is within the prescribed limitation, that is, 10 trout, the subsequent possession, even in excess of the prescribed maximum would be lawful. In that case defendant had in his possession a quantity of steel-head salmon caught

in the Columbia River. He offered to prove that the fish had been caught during the open season but the trial court sustained an objection to this testimony upon the ground that it was immaterial and incompetent. Defendant was convicted of the offense of possession.

The prosecution was brought under an Act of 1891, amended by an Act of 1893, which provided for a closed season for the taking of salmon in various rivers in Oregon. The particular section under which the prosecution was brought provided that it was unlawful for any person or persons to receive or have in his possession, or offer for sale or transportation, or to transport during the closed season named in the act, any fish, "which may be caught in any of these streams as aforesaid", specifying certain varieties of salmon. The particular question for decision was whether the statute, as amended, prohibited a person having in his possession or offering for sale during the closed season any fish of the varieties mentioned which were caught in any of the rivers enumerated during the open season. The Supreme Court of Oregon construed the act to mean the catching of salmon in the streams enumerated during the closed season, and stated, " 'Which may be caught in any of these streams as aforesaid,' is the language of the section. The words 'as aforesaid' do not relate to the streams themselves, but *to the time or manner of taking fish from them.* 'As' qualifies 'caught', making the sentence read, by the transposition, 'caught as aforesaid in any of these streams', and means fish caught during the closed season aforesaid in any of these streams. This is in accordance with the grammatical relation of the words." (Italics supplied.)

No such question arises in this case, nor is the rationale of the McGuire case applicable herein. The McGuire case was decided in 1893. In 1913 it was,

in effect, overruled by the Supreme Court of Oregon in the case of State v. Pulos, supra, construing a statute making it unlawful in certain counties in that State and between certain periods to take or kill, or have in possession any kind of wild ducks. Defendant was charged with having in his possession a duck during the season when it was unlawful to kill the same. The duck had been killed during the open season and therefore defendant contended that it would be unjust to punish him for having in his possession a bird which was lawfully killed. The court stated:

"We are asked to *fish through the statute* for something that may be construed to modify the section quoted, and to hold that *it does not mean what it says*, but something radically different. . . . The mischief that this section sought to remedy was the habit that prevailed to some extent among hunters who killed ducks during the closed season, and, when caught with the game in their possession, claimed that it had been killed during the open season. Experience had shown that it was next to impossible, in many instances, to show when the birds were killed, except from the statements of the sportsmen; and, while the veracity of fishermen and hunters is, of course, proverbial, experience had probably demonstrated to the legislative mind that in some exceptional cases a sportsman might possibly prevaricate rather than pay a fine of $50." (Italics supplied.)

The mischief which the Act of 1925 sought to remedy was the habit that prevailed to some extent among fishermen who caught and killed more than 10 trout in one day, and, when caught with the trout in their possession, claimed they had been caught and killed during several days. The difficulty of showing that trout, in excess of 10, in the possession of an individual in one day, had been caught over a period of two or three separate days is readily apparent.

Defendants' real complaint is that the act is unjust and unfair in permitting a man to catch 10 legal trout in one day, reduce them to his possession and then prohibiting him from again fishing until he has disposed of the trout in a legal manner. This overlooks the fact that there is nothing in the act which *compels a man to fish* any day or any number of consecutive days during the open season. The act says to the fisherman:

"You may catch, kill, or have in your possession not more than 10 trout in any one day, but you must not have any more in your possession in any one day, nor any at all during the closed season, except you may have at least 10 trout in your possession for six days after the season closes."

His right to fish is a qualified one and is subject to all the qualifications, limitations and restrictions imposed by the act. He is presumed to know the law and to act in accordance with it. If he chooses to violate any of its provisions, he is subject to the penalties set forth therein. Likewise, his right to possession is conditional and ends with the limitation prescribed by the act.

In effect, defendants ask the court to read something into the act which is not there. This can only be accomplished by changing the act itself, which is solely a matter of legislative and not judicial concern.

The appeal must be dismissed.

### Order

And now, February 1, 1949, the appeal of defendants is dismissed, each is found guilty of having in his possession 25 trout in excess of the number allowed by section 40 of the Act of May 2, 1925, and each is hereby sentenced to pay a fine of $250, together with costs of prosecution, and in default thereof each to

undergo imprisonment in the common jail of Clinton County for a term of one day for each dollar of the fine and costs hereby imposed.