**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1230

_____

LUIS AHUEHUETL-VALENTE,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A200-864-455)
Immigration Judge: Annie S. Garcy

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 16, 2018

Before:  GREENAWAY, JR., BIBAS, and FUENTES, *Circuit Judges*

(Opinion filed: February 12, 2019)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*.

Petitioner Luis Ahuehuetl-Valente ("Petitioner") seeks review of an order of the Board of Immigration Appeals denying his motion to reconsider its prior denial of a motion to reopen removal proceedings. For the reasons that follow, we will dismiss the petition for lack of jurisdiction.

**I.**

Petitioner is a native and citizen of Mexico. In May 2000, Petitioner entered the United States without inspection. He is the father of four minor children who are United States citizens: Ana Ivonne, Luis Enrique, Lurdes Aide, and Jennifer.[1] Petitioner resides with his children and their mother in a house that they share with two families.[2] He has two jobs: one working for a landscaping company and the other working as a part-time deliveryman and clerk for a shoe store. His children's mother has a part-time job cleaning houses.

**A.    Proceedings before the Immigration Court**

In December 2010, the Department of Homeland Security served Petitioner with a Notice to Appear which alleged that he violated the Immigration and Nationality Act by

---

[1] Petitioner provided a copy of each child's birth certificate to the Immigration Judge. Ana Ivonne was born on January 10, 2003; Luis Enrique was born on December 12, 2003; Lurdes Aide was born on March 30, 2007; and Jennifer was born on July 12, 2010. The Immigration Judge noted in her decision that the birth certificate for Ana Ivonne does not include the name of Ana Ivonne's father. Nevertheless, given the evidence that Ana Ivonne resided with Petitioner, the Immigration Judge assumed that Ana Ivonne was Petitioner's biological daughter.

[2] Petitioner testified that the mother of his children does not have legal status.

entering the United States without admission or parole.[3] Petitioner, represented by

counsel, conceded his removability but applied for cancellation of removal on the ground

that his removal would cause "exceptional and extremely unusual hardship" to his

children.[4] In the alternative, Petitioner sought a discretionary grant of voluntary departure

under 8 U.S.C. § 1229c(a).

In July 2014, the Immigration Judge held a merits hearing on Petitioner's

application for cancellation of removal. At the hearing, Petitioner testified that his four

children would stay with their mother if he was removed to Mexico. He also testified that

if removed, his children would experience financial hardship, and that they would do

poorly in school without his presence.

In a written decision issued in February 2016, the Immigration Judge denied

Petitioner's application and ordered him removed back to Mexico.[5] The judge found that

Petitioner did not meet his burden for cancellation of removal because he failed to

demonstrate (1) that he had "been physically present in the United States for a continuous

---

[3] *See* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.").

[4] *See id.* § 1229b(b)(1)(D) (providing that removal may be cancelled if an alien who is inadmissible or deportable from the United States establishes, *inter alia,* "that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence").

[5] The Immigration Judge rejected Petitioner's request for voluntary departure, reasoning that he lacked the financial means to pay for his departure. *See* 8 U.S.C. § 1229c(b)(1)(D) (stating that voluntary departure may be granted if, *inter alia*, the alien has established by clear and convincing evidence that he or she "has the means to depart the United States and intends to do so").

period of not less than 10 years,"[6] and (2) that his children would suffer "exceptional and extremely unusual hardship"[7] if he were removed to Mexico.[8]

Specifically, as to the "exceptional and extremely unusual hardship" requirement, the Immigration Judge acknowledged Petitioner's concerns about his children's emotional well-being and school performance. She nevertheless concluded that the natural sadness of separation from a parent who is ordered removed does not satisfy the "exceptional and extremely unusual hardship" standard. The Immigration Judge also found that Petitioner presented "insufficient evidence" that his children's economic welfare reached the level of "exceptional and extremely unusual hardship."[9]

### B.　Proceedings before the Board of Immigration Appeals

#### 1. Appeal of the Merits

Through new counsel, Petitioner appealed the Immigration Judge's decision to the Board. In December 2016, the Board dismissed the appeal. It held, among other things, that the Immigration Judge properly concluded that Petitioner did not prove that his removal would result in "exceptional and extremely unusual hardship" to his children.[10]

---

[6] *Id.* § 1229b(b)(1)(A).

[7] *Id.* § 1229b(b)(1)(D).

[8] *See id.* § 1229b(b)(1) (enumerating the four requirements for establishing eligibility for cancellation of removal).

[9] A.R. 178.

[10] In its opinion, the Board recognized that the Immigration Judge had denied Petitioner's application based, in part, on her conclusion that Petitioner did not establish a continuous physical presence. It nevertheless explicitly declined to discuss that aspect of the Immigration Judge's decision on the basis that her conclusion regarding the lack of "exceptional and extremely unusual hardship" was dispositive. As for the Immigration Judge's voluntary-departure-related decision, the Board noted that the issue had been waived.

### 2. Motion to Reopen

Three months later, Petitioner filed a motion to reopen removal proceedings. In that motion, he asserted that the Board should reopen removal proceedings to give him the opportunity to reapply for cancellation of removal on the ground that his departure would cause his thirteen-year-old son to suffer "unusual and extreme hardship."[11] Petitioner alleged that his son "was ill with a serious disease to his liver," a disease which he did not learn of until about one week after the Board's dismissal of his appeal.[12] He attached exhibits including, but not limited to, an affidavit from himself, as well as a letter and prescription blank from his son's doctor.[13]

The Board denied the motion, finding that Petitioner failed to prove that the new evidence regarding his son's liver problems would likely change the outcome of his case.[14] The Board further emphasized, in a footnote, that Petitioner's motion "ha[d] not meaningfully addressed" the Immigration Judge's dispositive finding that Petitioner had not established the required ten years of continuous physical presence.[15]

---

[11] A.R. 96.

[12] A.R. 95. Under 8 C.F.R. § 1003.2(c)(1), a motion to reopen removal proceedings "shall not be granted unless it appears . . . that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing [.]"

[13] A movant must "state the new facts that will be proven at a hearing to be held if the motion is granted," and support those facts "by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(B); 8 C.F.R. § 1003.2(c)(1).

[14] *See Matter of Coelho*, 20 I. & N. Dec. 464, 472 (BIA 1992). The Board pointed out that the evidence did not show "a serious medical condition, and the prescribed treatment [was] limited to a recommendation for weight loss and additional testing in [six] months." A.R. 87.

[15] A.R. 88.

### 3. Motion to Reconsider

A month later, Petitioner filed a motion for reconsideration, reiterating his request that the Board reopen his removal proceedings.[16] Specifically, he asked the Board to reconsider its denial of his motion to reopen because of three "new facts."[17] First, according to Petitioner, since the Board's prior decision, his son's doctor had provided him with a "clearer diagnosis" that was previously unavailable.[18] Second, Petitioner's children were "undergoing dramatic psychological changes" after learning of their father's deportation and their brother's medical condition.[19] Third, and finally, "recently discovered"[20] documents, some of which "were not available until recently,"[21] showed Petitioner's presence in the United States for over ten years.[22]

In a written decision issued in January 2018, the Board denied the motion to reconsider on the basis that Petitioner established no legal or factual error in the Board's previous decision declining to reopen the removal proceedings.

---

[16] A motion to reconsider must be based on errors of fact or law. 8 U.S.C. § 1229a(c)(6)(C); 8 C.F.R. § 1003.2(b)(1).

[17] A.R. 13, 14.

[18] A.R. 14. Petitioner submitted a letter from the doctor which indicated that Luis Enrique was being monitored "for elevated liver enzymes likely due to nonalcoholic steatohepatitis," and "needs to [lose] weight and have his liver tested periodically." A.R. 19. The doctor concluded: "[t]his condition can lead to cirrhosis and possibly require liver transplant." *Id.*

[19] A.R. 14. In support of this claim, Petitioner provided a report from a social worker who interviewed Petitioner, his four children, and the children's mother.

[20] A.R. 13.

[21] A.R. 14.

[22] Petitioner provided numerous documents including income tax returns and earning statements.

Shortly thereafter, Petitioner filed the instant petition for review and the Government moved to dismiss on jurisdictional grounds.

## II.

Before this Court, Petitioner seeks review of the Board's denial of his motion to reconsider. It is undisputed that we generally have jurisdiction over a Board of Immigration Appeals' reconsideration decision.[23] The Government, however, contends that under 8 U.S.C. § 1252(a)(2)(B)(i) and our decision in *Mendez–Moranchel v. Ashcroft*,[24] we are foreclosed from reviewing the Board's reconsideration decision in this case.[25]

Section 1252(a)(2)(B)(i) provides, in relevant part: "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under [8 U.S.C. § 1229b]." In interpreting that statutory language, we held in *Mendez–Moranchel* that: (1) "for nondiscretionary factors, the Court maintains jurisdiction, but as to discretionary decisions we lack jurisdiction,"[26] and (2) "[t]he decision whether an alien meets the hardship requirement in 8 U.S.C. § 1229b is such a discretionary judgment."[27] Accordingly, we lack jurisdiction to review whether the Board and the Immigration Judge were correct in determining that Petitioner did not meet the "exceptional and extremely unusual hardship" requirement for cancellation of removal.

---

[23] *Castro v. Att'y Gen.*, 671 F.3d 356, 364 (3d Cir. 2012).
[24] 338 F.3d 176 (3d Cir. 2003).
[25] *Cf. Khan v. Att'y Gen.*, 691 F.3d 488, 492 (3d Cir. 2012) ("We have jurisdiction to review the BIA's denial of a motion to reopen unless 8 U.S.C. § 1252(a)(2) otherwise strips us of jurisdiction.").
[26] 338 F.3d at 178.
[27] *Id.* at 179.

Notwithstanding the fact that the case before us involves the Board's denial of a motion to reconsider its prior denial of a motion to reopen rather than the Board's decision on direct appeal, the substance of the petition for review implicates the discretionary hardship determination which we do not have jurisdiction to review.[28] In his brief, Petitioner does not challenge the Immigration Judge's determination that he was not in the country for ten years. Instead, he chooses to address what the Board considered in connection with its hardship determination. So, in order for us to resolve Petitioner's arguments, we would have to review the Board's hardship determination. As we have noted when considering our ability to review a motion to reconsider, "[s]ome review of the [Board's] merits decision is required in order to determine whether the [Board] erred in concluding, on reconsideration, that [the alien] had not shown any error of fact or law in that decision."[29]

Despite that limitation on our jurisdiction, we retain jurisdiction to review constitutional claims and questions of law under § 1252(a)(2)(D).[30] Here, Petitioner maintains that his petition raises a question of law over which we do have jurisdiction. In particular, citing an out-of-circuit opinion,[31] he argues that in denying his motion to

---

[28] *See* Petitioner's Br. at 15 (asking the court to conclude that the Board "legally erred by failing to take into account the significant factors in its analysis of the hardship requirement").

[29] *Castro*, 671 F.3d at 364.

[30] *See Sukwanputra v. Gonzales*, 434 F.3d 627, 634 (3d Cir. 2006) ("By virtue of § 1252(a)(2)(D), constitutional claims or questions of law raised in a petition for review elude the jurisdiction-stripping provisions of the [Immigration and Nationality Act].").

[31] *Mendez v. Holder*, 566 F.3d 316 (2d Cir. 2009) (per curiam).

reconsider, the Board committed legal error because it completely failed to consider certain evidence before it.

Indeed, it is well-established that we have jurisdiction over colorable constitutional claims or questions of law raised in a petition for review.[32] However, contrary to Petitioner's characterization of his claim as a question of law, his contention does not raise a question of law to which our jurisdiction extends. As we have recognized, "arguments such as that an Immigration Judge or the [Board] incorrectly weighed evidence, failed to consider evidence or improperly weighed equitable factors are not questions of law under § 1252(a)(2)(D)."[33]

For the foregoing reasons, we will dismiss the petition for review.[34]

---

[32] *See Cospito v. Att'y Gen.*, 539 F.3d 166, 170 (3d Cir. 2008) (per curiam). "To determine whether a claim is colorable [for purposes of jurisdiction under 8 U.S.C. § 1252(a)(2)(D)], we ask whether 'it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous.'" *Pareja v. Att'y Gen.*, 615 F.3d 180, 186 (3d Cir. 2010) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006)).

[33] *Jarbough v. Att'y Gen.*, 483 F.3d 184, 189 (3d Cir. 2007).

[34] We also reiterate that the Immigration Judge denied cancellation both for lack of hardship and for failure to meet the ten-year physical-presence requirement under § 1229b(b). As a result, notwithstanding our decision, given that Petitioner has waived appeal of the physical-presence requirement, he remains ineligible for cancellation of removal. *See Lie v. Ashcroft*, 396 F.3d 530, 532 n.1 (3d Cir. 2005).